Samuel J. Kaufman (VSB# 48442)
Jeremiah M. Yourth (VSB# 81113)
Owen & Owens PLC
15521 Midlothian Turnpike, Suite 300
P. O. Box 717
Midlothian, Virginia 23113
(804) 594-1911 Office
(804) 594-0455 Fax
skaufman@owenowens.com
jyourth@owenowens.com
*Counsel for Union Bank & Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **In re:  STACEY A. WHARAM** ) | |
| ) | **Case No. 15-10501-BFK** |
| ) | |
| **Debtor,** ) | **Chapter 7** |
| ) | |
| ) | |
| **UNION BANK & TRUST,** ) | |
| **Successor by merger to,** ) | |
| **STELLARONE BANK** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Adv. Pro. No.:** |
| **v.** ) | |
| ) | |
| **STACEY A. WHARAM** ) | |
| ) | |
| **Debtor.** ) | |

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY
AND OBJECTING TO DEBTOR'S DISCHARGE PURSUANT TO
SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE**

Plaintiff, Union Bank & Trust, successor by merger to StellarOne Bank (hereinafter

"Union"), by counsel, and pursuant to 11 U.S.C. § 523, 11 U.S.C. § 727 and Rules 4007 and

7001 of the Federal Rules of Bankruptcy Procedure, files this Complaint to determine the dischargeability of certain debts of Defendant, Stacey A. Wharam (the "Debtor") and allege as follows:

## JURISDICTION

1.      On February 12, 2015, the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia.

2.      As of the date of this Complaint, the Debtor has not been granted a discharge.

3.      This Complaint is timely because the date by which a Complaint objecting to the Debtors' discharge or to determine dischargeability of a debt expires on October 31, 2015.

4.      This is an adversary proceeding in which the plaintiff is objecting to the Debtor's discharge under Bankruptcy Code § 727(a)(4)(A) and is seeking a determination as to the dischargeability of the debt owed by the Debtors to plaintiff under Bankruptcy Code § 523(a).

5.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code §§ 523 and 727.

6.      This case is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I).

## PARTIES

7.      Plaintiff Union is a Virginia Corporation duly authorized to transact business in the Commonwealth of Virginia, with its principal office located at 1051 East Cary Street, Suite 1200, Richmond, Virginia 23219, and is a creditor of the Debtor.

8.      Defendant is the Debtor in the above-captioned case and filed for relief under Chapter 7 of the United States Bankruptcy Code on February 12, 2015.

## FACTS

9.      This action involves certain promissory notes, formerly secured by a Deed of

Trust in favor Union, which encumbered two (2) parcels of real property described as follows:

a.      The "Staunton Parcel" commonly known as 910 Greenville Avenue, Staunton,

Virginia 24402 in the City of Staunton, Tax Map No. 2800, and more particularly described as

follows:

**Parcel Two:** All of the following piece or parcel of land, together with its improvements and
appurtenances thereunto belonging, located and being in the City of Staunton, County of
Augusta, Commonwealth of Virginia, and more particularly described as follows:

BEGINNING at a point on the sidewalk in the Westerly Line of Greenville Avenue, said point
marking a Southeasterly corner of land, now or formerly, of First & Merchants National Bank; and
running thence, with said line of Greenville Avenue
1) S. 17° 08' E., 146.90' to an iron, a corner to the land, now or formerly, of Virginia Bottling
Corporation; thence, with the Northerly line of Virginia Bottling Corporation
2) S. 73°40' W, 200.00' to an iron in the Easterly line of the land, now or formerly, of Osbourne;
thence, with the Easterly line of Osbourne
3) N. 17°08' W., 146.90' to an iron, a corner of land, now or formerly, of First & Merchants
National Bank; thence, with the Southerly line of First & Merchants National Bank
4) N. 73°40' E., 200.00' to the point of beginning; and containing 29,377 square feet of land, more
or less.

BEING the same property conveyed to REA Partnership-A, a Virginia general partnership, by
deed from McDonald's Corporation, a Delaware corporation, successor in interest by Merger to
Franchise Realty Interstate Corporation, a Illinois corporation, dated April 11, 1989, recorded April
28, 1989 in the Clerk's Office of the Circuit Court of the City of Staunton, Virginia, in Deed Book
294, page 102.

and;

b.      The "Culpeper Parcel" commonly known as 709 James Madison

Highway, Culpeper, VA 22701 in Culpeper County, Tax Map No. 41-42U3, and more

particularly described as follows: [Legal description on following page.]

**Parcel One:** All that certain lot or parcel of land, with all buildings and improvements thereon, and appurtenances thereunto belonging, situate, lying and being on the north side of U.S. Route 15-29 Business, in the Town and County of Culpeper, Virginia, in East Fairfax Magisterial District, and shown as "Out Parcel #3" on plat of Dominion Square Shopping Center, recorded among the land records of Culpeper County, Virginia, in Large Plat Book 3, pages 38 and 39, and being more fully described on a plat by Barry L. Wissinger, CLS, dated February 24, 1989, a copy of which is recorded in the aforesaid County in Deed Book 409, page 71.

BEING the same property conveyed to REA Partnership-A, a Virginia general partnership, by deed from Aston-Culpeper, a North Carolina limited partnership, dated March 10, 1989, recorded March 17, 1989 in the aforesaid Clerk's Office in Deed Book 409, page 66.

(the Staunton Parcel and Culpeper Parcel may be collectively referred to as the "Properties").

10.     Union had an interest in the Properties by virtue of being the beneficiary and noteholder by way of merger with StellarOne Bank under that certain Credit Line Deed of Trust dated February 28, 2013 from REA Partnership-A to Dale V. Clark and Douglas D. Callaway, Trustees, in the maximum principal amount of Nine Hundred Thousand and 00/100 Dollars ($900,000.00) for the benefit of StellarOne Bank and encumbering the Properties, said Deed of Trust being recorded on March 1, 2013 in the Clerk's Office of the Circuit Court of the City of Staunton as Instrument No. 130000493 and in the Clerk's Office of the Circuit Court of Culpeper County as Instrument No. 130001472 (a copy of the "2013 Union Deed of Trust" is attached as **Exhibit A**).

11.     Debtor and her former husband,  Richard E. Austin ("Mr. Austin"), are both borrowers under that certain Promissory Note dated February 28, 2013, held by Union (the "2013 Union Secured Note"), said 2013 Union Secured Note being the underlying debt instrument directly pertaining to the 2013 Union Deed of Trust.  A copy of the 2013 Union Secured Note is attached as **Exhibit B**.

12.     Debtor and Mr. Austin are also borrowers under that certain Promissory Note dated February 13, 2013 held by Union (the "2013 Union Cross-Collateralized Note"), said

Cross-Collateralized Note being cross-collateralized with the 2013 Union Secured Note. A copy of the 2013 Union Cross-Collateralized Note is attached as **Exhibit C**.

13.     Debtor and Mr. Austin were a married couple at all times relevant to this action up through December 3, 2014, the date of their divorce.

14.     On or about July 17, 1998, Mr. Austin allegedly executed a Power of Attorney appointing Debtor as his true and lawful attorney-in-fact. A copy of the "1998 POA" is attached as **Exhibit D**.

15.     The 2013 Union Secured Note and the 2013 Union Cross-Collateralized Note were executed by Debtor individually and as attorney-in-fact for Mr. Austin.

16.     The 1998 POA was recorded in the Clerk's Office of the Circuit Court of Albemarle County on January 26, 1999 in Deed Book 1782, page 0470.

17.     On or about February 28, 2013, Mr. Austin allegedly executed a second Power of Attorney appointing Debtor as his true and lawful attorney-in-fact for the purpose of executing documents pertaining to the closing of the loan underlying the 2013 Union Secured Note including, without limitation, executing the 2013 Union Deed of Trust. A copy of the "2013 POA" is attached as **Exhibit E**.

18.     The 2013 POA was recorded in the Clerk's Office of the Circuit Court of Culpeper County on February 28, 2013, as Instrument No. 130001471.

Loan from Union

19.     On or about February 28, 2013, Union (thorough its predecessor) extended a credit line to Debtor and Mr. Austin in the maximum principal amount of Nine Hundred Thousand and 00/100 Dollars ($900,000.00) by way of the 2013 Union Secured Note.

20.     Payment under the 2013 Union Secured Note was secured by the 2013 Union Deed of Trust.

21.     The 2013 Union Secured Note is signed by Debtor individually and by Debtor as the attorney-in-fact for Mr. Austin under the 1998 POA and the 2013 POA.

22.     The 2013 Union Deed of Trust was signed by Debtor as attorney-in-fact for Mr. Austin as general partner for REA Partnership.

23.     Debtor was also a partner of REA Partnership at the time the 2013 Union Deed of Trust was executed and given.

24.     The sum of Forty Five Thousand Two and 78/100 Dollars ($45,002.78) was paid to a prior lienholder from the funds disbursed at closing under the 2013 Union Secured Note in order to satisfy the lien.

25.     From February 28, 2013 through November 29, 2013, the principal amount of Six Hundred Forty Nine Thousand Eight Hundred Seventy Four and 90/100 Dollars ($649,874.90) was disbursed by Union under the loan memorialized by the 2013 Union Secured Note (the "Disbursed Funds").

### Default and Alleged Forgery

26.     The loan underlying the 2013 Union Secured Note is in default.

27.     The loan underlying the 2013 Union Cross-Collateralized Note is also in default.

28.     Union seeks to enforce its rights under the 2013 Union Secured Note and the 2013 Union Cross-Collateralized Note.

29.     In response to learning that Union intended to initiate the foreclosure process, Mr. Austin asserted that the 1998 POA and 2013 POA are products of forgery and, as a result, Mr.

Austin further alleges that the 2013 Union Deed of Trust was unenforceable and Union is not entitled to any of the proceeds from the sale of the Properties being held in escrow.

30.     On or about April 21, 2015, Union filed suit in the Circuit Court of the City of Staunton, Virginia, Case Number CL15000194 (the "State Court Action") regarding the above-referenced loans and, *inter alia*, to determine the enforceability and priority of the 2013 Deed of Trust.  A copy of the State Court Action Complaint is attached as **Exhibit F**.

31.     Debtor is named as a Defendant in the State Court Action as a necessary party (no claims for damages are asserted against Debtor due to the automatic stay).

32.     After the defendants in the State Court Action filed their response to Union's Complaint, the Circuit Court of the City of Staunton entered a Consent Order on August 11, 2015 (the "State Court Order") which, pending a final decision on the merits, allowed the Properties to be sold and conveyed to a third-party, free of any encumbrances created by the 2013 Union Deed of Trust.  In consideration of Union's agreement to release the liens on the Properties and allow them to be conveyed to a third-party, the Court ordered that a portion of the sale proceeds was to be paid into an escrow account and that Union had a corresponding security interest in said proceeds.  If the State Court Action results in a finding that the 2013 Deed of Trust and the underlying notes were enforceable, Union will be entitled to the proceeds held in escrow, or a portion thereof.

33.     Mr. Austin has asserted in the State Court Action that the powers of attorney that was relied upon by Union in allowing Debtor to execute the loan documents was forged and that Debtor had no authority to act on his behalf.

34.     Mr. Austin has also filed an Adversary Proceeding in this matter to challenge the

dischargeability of several debts, including the 2013 Union Secured Note and the 2013 Union

Cross-Collateralized Note due to Debtor's alleged fraud.

35.     Union files this adversary proceeding to protect its interests in the event it is

unable to recover the funds owed to it by way of the State Court Action and there is a finding

that Debtor did commit the acts alleged by Mr. Austin.

36.     Union maintains upon its current information and belief that it is entitled to the

relief prayed for in the State Court Action.  Notwithstanding, Mr. Austin has raised a defense

implicating Debtor and, upon information and belief, intends to assert further facts implicating

Debtor.

## COUNT ONE – NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM UNDER SECTION 523(a)(2) OF THE BANKRUPTCY CODE

37.     Plaintiff repleads and re-alleges the allegations contained in paragraphs 1 through

36 as if fully set forth herein and sets for these allegations in the alternative to the State Court

Action.

38.     Any and all funds obtained by Debtor and/or Mr. Austin or any entity in which

they have or had an ownership interest in were obtained by false pretenses, false representations

and/or actual fraud.

39.     The Debtor engaged in fraud and misrepresented her capacity as attorney-in-fact

for Mr. Austin.

WHEREFORE, Plaintiff respectfully requests that this Court order and determine that the

obligations owed to Plaintiff under the 2013 Union Secured Note and the 2013 Union Cross-

Collateralized Note are non-dischargeable pursuant to 11 U.S.C. §523(a)(2); enter judgment in

favor of the Plaintiff for the entire balance owing under the 2013 Union Secured Note and the

2013 Union Cross-Collateralized Note, plus pre and post-judgment interest; award Plaintiff its attorney's fees and costs; and grant such other relief deemed necessary and just.

### COUNT TWO – NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

40.     Plaintiff repleads and re-alleges the allegations contained in paragraphs 1 through 39 as if fully set forth herein and sets forth these allegations in the alternative to the State Court Action.

41.     Any and all funds obtained by Debtor and/or Mr. Austin or any entity in which they have or had an ownership interest in were obtained fraud and/or defalcation by the Debtor.

42.     Debtor engaged in fraud and/or defalcation while acting in a fiduciary capacity as attorney-in-fact.

WHEREFORE, Plaintiff respectfully request that this Court order and determine that the obligations owed to Plaintiff under the 2013 Union Secured Note and the 2013 Union Cross-Collateralized Note are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4); enter judgment in favor of the Plaintiff for the entire balance owing under the 2013 Union Secured Note and the 2013 Union Cross-Collateralized Note, plus pre and post-judgment interest; award Plaintiff its attorney's fees and costs; and grant such other relief deemed necessary and just.

### COUNT THREE – NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

43.     Plaintiff repleads and re-alleges the allegations contained in paragraphs 1 through 42 as if fully set forth herein and sets forth these allegations in the alternative to the State Court Action.

44.     Any and all funds obtained by Debtor and/or Mr. Austin or any entity in which they have or had an ownership interest in were a result of a willful and malicious injury, by Debtor, against Union.

45.     The Debtor engaged in fraud and misrepresented her capacity as attorney-in-fact for Mr. Austin.

WHEREFORE, Plaintiff respectfully request that this Court order and determine that the obligations owed to Plaintiff under the 2013 Union Secured Note and the 2013 Union Cross-Collateralized Note are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6); enter judgment in favor of the Plaintiff for the entire balance owing under the 2013 Union Secured Note and the 2013 Union Cross-Collateralized Note, plus pre and post-judgment interest; award Plaintiff its attorney's fees and costs; award Plaintiff its attorney's fees and costs; and grant such other relief deemed necessary and just.

Respectfully Submitted,

UNION BANK & TRUST

BY:_____ /s/ Samuel J. Kaufman_____
Of Counsel

Samuel J. Kaufman (VSB# 48442)
Jeremiah M. Yourth (VSB# 81113)
Owen & Owens PLC
15521 Midlothian Turnpike, Suite 300
P. O. Box 717
Midlothian, Virginia 23113
(804) 594-1911 Office
(804) 594-0455 Fax
skaufman@owenowens.com
jyourth@owenowens.com
*Counsel for Plaintiff*

**EXHIBIT A—"2013 UNION DEED OF TRUST"**

PG 0 0 0 4  MAR-1 13

*Return to:*
TUCKER GRIFFIN BARNES P.C
ATTORNEYS AT LAW
307 WEST RIO ROAD
CHARLOTTESVILLE, VIRGINIA 22901

130000493

Pursuant to Section 58.1-803D of the Code of Virginia, this is to certify that this document represents the refinancing of an existing Deed of Trust in the Clerk's Office of the Circuit Court of ___Culpeper___ County(/City), Virginia, in Deed Book _____, page _____, or as instrument # _12-0000434_ on which tax was paid.

WHEN RECORDED MAIL TO:
STELLARONE BANK, COMMERCIAL LENDING CHARLOTTESVILLE, 105 ARBOR DRIVE,
CHRISTIANSBURG, VA 24073

Tax Map Reference No(s): 41-42U3; 2800

Page 1

This Deed of Trust prepared by: LOAN CLOSING, STELLARONE BANK



*0002131754%0340%022813%#######%#########*

## DEED OF TRUST

### THIS IS A CREDIT LINE DEED OF TRUST

Maximum aggregate amount of principal
to be secured hereby at any one time: $900,000.00

Name and address of Noteholder secured hereby:
**STELLARONE BANK**
**105 ARBOR DRIVE**
**CHRISTIANSBURG, VA 24073**

THIS DEED OF TRUST is dated February 28, 2013, among REA PARTNERSHIP-A, a Virginia general partnership, whose address is 630 TANNERS LANE, EARLYSVILLE, VA  22936 ("Grantor"); STELLARONE BANK, whose address is COMMERCIAL LENDING CHARLOTTESVILLE, 105 ARBOR DRIVE, CHRISTIANSBURG, VA  24073 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Dale V CLARK, a resident of Virginia, whose address is 105 Arbor Drive, Christiansburg, VA  24073 and DOUGLAS D CALLAWAY, a resident of Virginia, whose address is 590 Peter Jefferson Parkway, Suite 250, Charlottesville, VA  22911 ("Grantee," also referred to below as "Trustee"), either of whom may act.

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys, transfers, encumbers and pledges and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in TOWN AND COUNTY OF CULPEPER AND CITY OF STAUNTON, Commonwealth of Virginia:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as   709 JAMES MADISON HIGHWAY, CULPEPER, VA 22701; 910 GREENVILLE AVENUE, STAUNTON, VA 24401. The Real Property Tax Map Reference No(s) is/are 41-42U3; 2800.

CROSS-COLLATERALIZATION. In addition to the Note, this Deed of Trust secures all obligations, debts

Pursuant to Section 58.1-803D of the Code of Virginia, this is to certify that this document represents the refinancing of an existing Deed of Trust in the Clerk's Office of the Circuit Court of ___Staunton___ County(/City), Virginia, in Deed Book _____, page _____ or as instrument # _12-0000073_ on which tax was paid.

PG0005 MAR-1 13

## DEED OF TRUST
**(Continued)**

Loan No: 2131764                                                                 Page 2

---

and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of
them, as well as all claims by Lender against Borrower and Grantor or any one or more of them,
whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note,
whether voluntary or otherwise, whether due or not due, direct or indirect, determined or
undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be
liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party
or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by
any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may
become otherwise unenforceable.

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the indebtedness including, without
limitation, a revolving line of credit, under which Lender may make advances to Borrower so long as
Borrower complies with all the terms of the Note.

**FUTURE ADVANCES.** In addition to the amounts specified in the Note, this Deed of Trust also secures
future advances.

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed
of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property
and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code
security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN
THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE
INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE
RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND
ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) Grantor has the full
power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (b) the
provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other
instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or
order applicable to Grantor; (c) Grantor has established adequate means of obtaining from Borrower on
a continuing basis information about Borrower's financial condition; and (d) Lender has made no
representation to Grantor about Borrower (including without limitation the creditworthiness of
Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower and
Grantor shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and
Borrower and Grantor shall strictly perform all their respective obligations under the Note, this Deed of
Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's
and Grantor's possession and use of the Property shall be governed by the following provisions:

  **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in
  possession and control of the Property; (2) use, operate or manage the Property; and (3) acting
  as Lender's agent, collect the Rents from the Property.

  **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform
  all repairs, replacements, and maintenance necessary to preserve its value.

PG0006 MAR-1 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754

Page 3

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to

Case 15-01148-BFK   Doc 1   Filed 10/30/15   Entered 10/30/15 15:10:39   Desc Main
Document.   Page 15 of 140

PG 0 0 0 7  MAR - I 13

**DEED OF TRUST**

Loan No: 2131754                    **(Continued)**                    Page 4

the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Virginia law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.**  Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.**  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

PG 0 0 0 8 MAR-1 13

**DEED OF TRUST**
Loan No: 2131754                              **(Continued)**                                      Page 5

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property. If any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the

PG0009 MAR-113

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                                                                              Page 6

then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants generally that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in

PG0010 MAR-1 13

## DEED OF TRUST
**Loan No: 2131754**                                   (Continued)                                   **Page 7**

writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                                  Page 8

Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to

## DEED OF TRUST
### (Continued)

Loan No: 2131754                                                                              Page 9

make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business or the death of any partner, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

PG 0013 MAR-1 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                                          Page 10

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay. This right is in addition to all other rights given to holders of promissory notes under Title 55 of the Code of Virginia.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. In any foreclosure by notice and sale, the advertisement of sale by the Trustee shall be published once a week for two successive weeks in a newspaper having general circulation in a city or county where the Real Property, or any part of it, is located. Grantor expressly waives and releases any requirement or obligation that Lender or Trustee present evidence or otherwise proceed before any court or other judicial or quasi-judicial body as a precondition to or otherwise incident to the exercise of the powers of sale authorized by this Deed of Trust. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided in the Note, and all taxes and assessments due upon the Property at time of sale, and to retain as compensation a reasonable Trustee's commission; (b) second, to pay the whole amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in Trustee's hands are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the Property, less costs and expenses of obtaining possession.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the

PG0014 MAR-1 13

**DEED OF TRUST**

proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, a reasonable Trustee's commission and reasonable attorney fees incurred by the Trustee in performing its duties under the Deed of Trust, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee (and each of them if more than one) shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map

PG0015 MAR-1 13

## DEED OF TRUST
(Continued)

Loan No: 2131754                                                    Page 12

or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which he or she resides, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ADDENDUM TO FORECLOSURE.** IN THE EVENT TRUSTEES ARE INSTRUCTED TO PROCEED WITH FORECLOSURE BUT THE PROPERTY IS NOT SOLD THEN TRUSTEES ACTING HEREUNDER SHALL BE ENTITLED TO COMPENSATION FOR SERVICES IN THE AMOUNT OF TWO AND ONE-HALF PERCENT (2 1/2%) OF THE THEN OUTSTANDING INDEBTEDNESS SECURED BY THIS DEED OF TRUST.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) Grantor has the full

PG 0 0 1 6 MAR - 1 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                                    Page 13

power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (b) the
provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other
instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or
order applicable to Grantor; (c) Grantor has established adequate means of obtaining from Borrower on
a continuing basis information about Borrower's financial condition; and (d) Lender has made no
representation to Grantor about Borrower (including without limitation the creditworthiness of
Borrower).

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Deed of
Trust:

**Amendments.**  This Deed of Trust, together with any Related Documents, constitutes the entire
understanding and agreement of the parties as to the matters set forth in this Deed of Trust.  No
alteration of or amendment to this Deed of Trust shall be effective unless given in writing and
signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.**  If the Property is used for purposes other than Grantor's residence, Grantor shall
furnish to Lender, upon request, a certified statement of net operating income received from the
Property during Grantor's previous fiscal year in such form and detail as Lender shall require.  "Net
operating income" shall mean all cash receipts from the Property less all cash expenditures made in
connection with the operation of the Property.

**Caption Headings.**  Caption headings in this Deed of Trust are for convenience purposes only and
are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.**  There shall be no merger of the interest or estate created by this Deed of Trust with any
other interest or estate in the Property at any time held by or for the benefit of Lender in any
capacity, without the written consent of Lender.

**Governing Law.  This Deed of Trust will be governed by federal law applicable to Lender and, to the
extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to
its conflicts of law provisions.  This Deed of Trust has been accepted by Lender in the
Commonwealth of Virginia.**

**Choice of Venue.**  If there is a lawsuit, Grantor agrees upon Lender's request to submit to the
jurisdiction of the applicable courts for MONTGOMERY County, Commonwealth of Virginia.

**Joint and Several Liability.**  All obligations of Borrower and Grantor under this Deed of Trust shall
be joint and several, and all references to Grantor shall mean each and every Grantor, and all
references to Borrower shall mean each and every Borrower.  This means that each Grantor signing
below is responsible for all obligations in this Deed of Trust.  Where any one or more of the parties
is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender
to inquire into the powers of any of the officers, directors, partners, members, or other agents
acting or purporting to act on the entity's behalf, and any obligations made or created in reliance
upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Deed of
Trust unless such waiver is given in writing and signed by Lender.  No delay or omission on the
part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A
waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of
Lender's right otherwise to demand strict compliance with that provision or any other provision of

PG0017 HAR-I13

**DEED OF TRUST**
Loan No: 2131754                    (Continued)                              Page 14

this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and
Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to
any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the
granting of such consent by Lender in any instance shall not constitute continuing consent to
subsequent instances where such consent is required and in all cases such consent may be granted
or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be
illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending
provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending
provision shall be considered modified so that it becomes legal, valid and enforceable. If the
offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust.
Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of
this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of
this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of
Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties,
their heirs, personal representatives, successors and assigns. If ownership of the Property becomes
vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's
successors with reference to this Deed of Trust and the indebtedness by way of forbearance or
extension without releasing Grantor from the obligations of this Deed of Trust or liability under the
indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action,
proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the
homestead exemption laws of the Commonwealth of Virginia as to all indebtedness secured by this
Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used
in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall
mean amounts in lawful money of the United States of America. Words and terms used in the singular
shall include the plural, and the plural shall include the singular, as the context may require. Words and
terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in
the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means STELLARONE BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means RICHARD E. AUSTIN, BY STACEY A. AUSTIN, ATTORNEY-
IN FACT; and STACEY A. AUSTIN and includes all co-signers and co-makers signing the Note and
all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and
Trustee.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled
"Default".

PG0018 MAR-1 13

**DEED OF TRUST**
Loan No: 2131754                          (Continued)                          Page 15

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means REA PARTNERSHIP-A.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means STELLARONE BANK, its successors and assigns.

**Note.** The word "Note" means ANY NOTE, CREDIT AGREEMENT, OR ANY OTHER OBLIGATIONS OR RELATED DOCUMENTS, TOGETHER WITH ALL RENEWALS OF, EXTENSIONS OF, MODIFICATIONS OF, CONSOLIDATIONS OF AND SUBSTITUTIONS FOR THE "NOTE" OR RELATED DOCUMENTS. NOTICE TO **GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed

PG0019 MAR-1 13

**DEED OF TRUST**
Loan No: 2131754                                          **(Continued)**                                          Page 16

to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Dale V Clark, whose address is 105 Arbor Drive, Christiansburg, VA   24073 and Douglas D Callaway, whose address is 590 Peter Jefferson Parkway, Suite 250, Charlottesville, VA   22911 and any substitute or successor trustees.   If more than one person is named as trustee, the word "Trustee" means each such person.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.**

**THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

PG0020 MAR-1 13

## DEED OF TRUST
(Continued)

Loan No: 2131754                                                     Page 17

**GRANTOR:**

REA PARTNERSHIP-A

*Richard E. Austin by Stacey A. Austin Attorney In Fact*

By: _____ (Seal)
    RICHARD E. AUSTIN, BY STACEY A. AUSTIN,
    ATTORNEY IN FACT, General Partner of REA
    PARTNERSHIP-A

---

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF _VIRGINIA_        )
                    ) SS
COUNTY OF _ALBEMARLE_     )

On this __28th__ day of __February__, 20 _13_, before me, the undersigned Notary Public, personally appeared **RICHARD E. AUSTIN, BY STACEY A. AUSTIN, ATTORNEY IN FACT, General Partner of REA PARTNERSHIP-A**, and known to me to be a partner or designated agent of the partnership that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the partnership, by authority of statute or its Partnership Agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the partnership.

By _____    Residing at _Albemarle County VA_

Notary Public in and for _Virginia_    My commission expires _2/28/17_

                            My registration number is _101830_

(Notary seal: KIMBERLY K. RICHARDS, NOTARY PUBLIC, REG # 101830, MY COMMISSION EXPIRES 2/28/2017, COMMONWEALTH OF VIRGINIA)

LASER PRO Lending, Ver. 12.4.0.003  Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - VA  c:\CFI\LPL\G01.FC  TR-49878  PR-268

PG0021 MAR-1 13

## SCHEDULE A

**Parcel One:** All that certain lot or parcel of land, with all buildings and Improvements thereon, and appurtenances thereunto belonging, situate, lying and being on the north side of U.S. Route 15-29 Business, in the Town and County of Culpeper, Virginia, in East Fairfax Magisterial District, and shown as "Out Parcel #3" on plat of Dominion Square Shopping Center, recorded among the land records of Culpeper County, Virginia, in Large Plat Book 3, pages 38 and 39, and being more fully described on a plat by Barry L. Wissinger, CLS, dated February 24, 1989, a copy of which is recorded in the aforesaid County in Deed Book 409, page 71.

BEING the same property conveyed to REA Partnership-A, a Virginia general partnership, by deed from Aston-Culpeper, a North Carolina limited partnership, dated March 10, 1989, recorded March 17, 1989 in the aforesaid Clerk's Office in Deed Book 409, page 66.

**Parcel Two:** All of the following piece or parcel of land, together with its improvements and appurtenances thereunto belonging, located and being in the City of Staunton, County of Augusta, Commonwealth of Virginia, and more particularly described as follows:

BEGINNING at a point on the sidewalk in the Westerly Line of Greenville Avenue, said point marking a Southeasterly corner of land, now or formerly, of First & Merchants National Bank; and running thence, with said line of Greenville Avenue

1) S. 17° 08' E., 146.90' to an Iron, a comer to the land, now or formerly, of Virginia Bottling Corporation; thence, with the Northerly line of Virginia Bottling Corporation

2) S. 73°40' W, 200.00' to an Iron in the Easterly line of the land, now or formerly, of Osbourne; thence, with the Easterly line of Osbourne

3) N. 17°08' W., 146.90' to an iron, a corner of land, now or formerly, of First & Merchants National Bank; thence, with the Southerly line of First & Merchants National Bank

4) N. 73°40' E., 200.00' to the point of beginning; and containing 29,377 square feet of land, more or less.

BEING the same property conveyed to REA Partnership-A, a Virginia general partnership, by deed from McDonald's Corporation, a Delaware corporation, successor In interest by Merger to Franchise Realty Interstate Corporation, a Illinois corporation, dated April 11, 1989, recorded April 28, 1989 in the Clerk's Office of the Circuit Court of the City of Staunton, Virginia, in Deed Book 294, page 102.

FOR RECORDING PURPOSES ONLY, THIS PROPERTY IS LOCATED 50% IN THE COUNTY OF CULPEPER, AND 50% IN THE CITY OF STAUNTON.

REA by Saa

**EXHIBIT B—"2013 UNION NOTE"**

LK

*0002131754%0955%022813%ADA2660%241806781*

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $900,000.00 | 02-28-2013 | | 2131754 | 162 / 630 | ADA2660 | 11109 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower:  RICHARD E. AUSTIN, BY STACEY A. AUSTIN,          Lender:  STELLARONE BANK
         ATTORNEY IN FACT                                   COMMERCIAL LENDING CHARLOTTESVILLE
         STACEY A. AUSTIN                                   105 ARBOR DRIVE
         830 TANNERS LANE                                   CHRISTIANSBURG, VA 24073
         EARLYSVILLE, VA  22936

### IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**Principal Amount: $900,000.00**                                  Date of Note: February 28, 2013

**INITIAL INTEREST RATE.** The initial Interest Rate is 4.250%.

**PROMISE TO PAY.** RICHARD E. AUSTIN, BY STACEY A. AUSTIN, ATTORNEY IN FACT; and STACEY A. AUSTIN ("Borrower") jointly and severally promise to pay to STELLARONE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Thousand & 00/100 Dollars ($900,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on February 28, 2015. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning March 28, 2013, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Money Rate Section of the Wall Street Journal. If a range of Rates is published, the highest will be used, (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 4.250% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this Note be less than 4.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: STELLARONE BANK, LOAN OPERATIONS, 105 ARBOR DRIVE CHRISTIANSBURG, VA 24073.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 4.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 2131754

---

Death or Insolvency. The death of Borrower or the dissolution or termination of Borrower's existence as a going business, or a receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an Involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

HOMESTEAD WAIVER. Borrower, to the extent permitted by law, hereby waives Borrower's homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for MONTGOMERY County, Commonwealth of Virginia.

CONFESSION OF JUDGMENT. Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers FRANK MERRITT OR DAVID A. CIX as Borrower's attorney-in-fact to appear in the COUNTY OF MONTGOMERY OR COUNTY OF CHESTERFIELD clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. By a written instrument Lender may appoint a substitute for the above named attorney-in-fact. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $32.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Credit Line Deed of Trust dated February 28, 2013, to a trustee in favor of Lender on real property located in TOWN AND COUNTY OF CULPEPER AND CITY OF STAUNTON, Commonwealth of Virginia. The Real Property or its address is commonly known as 709 JAMES MADISON HIGHWAY, CULPEPER, VA 22701; 910 GREENVILLE AVENUE, STAUNTON, VA 24401.

(B) an Assignment of All Rents to Lender on real property located in TOWN AND COUNTY OF CULPEPER AND CITY OF STAUNTON, Commonwealth of Virginia. The Real Property or its address is commonly known as 709 JAMES MADISON HIGHWAY, CULPEPER, VA 22701; 910 GREENVILLE AVENUE, STAUNTON, VA 24401.

LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the

## PROMISSORY NOTE
(Continued)

Loan No: 2131754                                                           Page 3

specific inaccuracy(ies) should be sent to Lender at the following address: STELLARONE BANK LOAN OPERATIONS 105 ARBOR DRIVE CHRISTIANSBURG, VA 24073.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower, Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If "Borrower" consists of more than one party, the word "Borrower" as used in this Note shall refer to any one or more of the parties comprising "Borrower," and each of such parties shall be jointly and severally liable pursuant to this Note.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

*Richard E. Austin by Stacey A. Austin*

X _____ (Seal)             X _____ (Seal)
RICHARD E. AUSTIN, BY STACEY A. AUSTIN,                  STACEY A. AUSTIN
ATTORNEY IN FACT

LASER PRO Lending, Ver. 13.4.0.003 Copr. Harland Financial Solutions, Inc. 1997, 2013. All Rights Reserved. - VA  E:\CFI\LPL\D20.FC  TR-48275  PR-256

**EXHIBIT C—"2013 UNION CROSS-COLLATERALIZED NOTE"**

*0002131530%0955%021313%ADA2660%241806781*

JS

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $932,000.00 | 02-13-2013 | 02-13-2018 | 2131530 | 1CA / 023 | ADA2660 | MMW | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | RICHARD E. AUSTIN, BY STACEY A. AUSTIN,<br>ATTORNEY IN FACT<br>STACEY A. AUSTIN<br>830 TANNERS LANE<br>EARLYSVILLE, VA 22936 | Lender: | STELLARONE BANK<br>COMMERCIAL LENDING CHARLOTTESVILLE<br>105 ARBOR DRIVE<br>CHRISTIANSBURG, VA 24073 |
|---|---|---|---|

## IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**Principal Amount: $932,000.00**                                   Date of Note: February 13, 2013

PROMISE TO PAY. RICHARD E. AUSTIN, BY STACEY A. AUSTIN, ATTORNEY IN FACT; and STACEY A. AUSTIN ("Borrower") jointly and severally promise to pay to STELLARONE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Thirty-two Thousand & 00/100 Dollars ($932,000.00), together with interest on the unpaid principal balance from February 13, 2013, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 3.390% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in 59 regular payments of $5,876.40 each and one irregular last payment estimated at $769,685.41. Borrower's first payment is due March 13, 2013, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on February 13, 2018, and will be for all principal, accrued interest, and all other applicable fees, costs and charges. If any, not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

PREPAYMENT PENALTY. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Borrower may prepay all or any portion of this loan at any time, provided, however, that in the event of a refinance with an individual or a financial institution other than Lender within year one (1) from the date of the Note or Modification (whichever is applicable), Borrower shall pay, and the Lender shall be entitled to collect from Borrowers or any Guarantors, a penalty equal to two (2) percent of the amount prepaid; thereafter, for years two (2) and three (3), Borrower shall pay, and the Lender shall be entitled to collect from Borrowers or any Guarantors, a penalty equal to one (1) percent of the amount prepaid. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: STELLARONE BANK, LOAN OPERATIONS, 105 ARBOR DRIVE CHRISTIANSBURG, VA 24073.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 4.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The death of Borrower or the dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall

## PROMISSORY NOTE
### (Continued)

not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**HOMESTEAD WAIVER.** Borrower, to the extent permitted by law, hereby waives Borrower's homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for MONTGOMERY County, Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers FRANK MERRITT OR DAVID A. DIX as Borrower's attorney-in-fact to appear in the COUNTY OF MONTGOMERY OR COUNTY OF CHESTERFIELD clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. By a written instrument Lender may appoint a substitute for the above named attorney-in-fact. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $32.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A)   a Credit Line Deed of Trust dated February 13, 2013, to a trustee in favor of Lender on real property located in CITY OF CHARLOTTESVILLE AND COUNTY OF ALBEMARLE, Commonwealth of Virginia. The Real Property or its address is commonly known as 107 WEST MAIN STREET, CHARLOTTESVILLE, VA 22902; 8 GEORGETOWN GREEN; 13 GEORGETOWN GREEN; 24 GEORGETOWN GREEN; 113 GEORGETOWN GREEN, CHARLOTTESVILLE, VA 22901.

(B)   an Assignment of All Rents to Lender on real property located in CITY OF CHARLOTTESVILLE AND COUNTY OF ALBEMARLE, Commonwealth of Virginia. The Real Property or its address is commonly known as 107 WEST MAIN STREET, CHARLOTTESVILLE, VA 22902; 8 GEORGETOWN GREEN; 13 GEORGETOWN GREEN; 24 GEORGETOWN GREEN; 113 GEORGETOWN GREEN, CHARLOTTESVILLE, VA 22901.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: STELLARONE BANK LOAN OPERATIONS 105 ARBOR DRIVE CHRISTIANSBURG, VA 24073.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for

## PROMISSORY NOTE
### (Continued)

Loan No: 2131530                                                                    Page 3

any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If "Borrower" consists of more than one party, the word "Borrower" as used in this Note shall refer to any one or more of the parties comprising "Borrower," and each of such parties shall be jointly and severally liable pursuant to this Note.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)          X _____ (Seal)
RICHARD E. AUSTIN, BY STACEY A. AUSTIN,              STACEY A. AUSTIN
ATTORNEY IN FACT

LASER PRO Lending, Ver. 15.4.0.013  Copr. Harland Financial Solutions, Inc. 1997, 2015.  All Rights Reserved.  - VA  DCPLPL/CD/LPL-D35.FC  PR-04

**EXHIBIT D—"1998 POA"**

BK 1782 PG 0470                           001113

# POWER OF ATTORNEY

## OF

## RICHARD E. AUSTIN

I, RICHARD E. AUSTIN hereby appoint STACEY A. AUSTIN as my true and lawful attorney-in-fact (Attorney). My Attorney is authorized to perform any acts of any nature that, in the opinion of my Attorney, should be done in the circumstances, as fully and effectively as I could do if acting personally. Acts which my Attorney may perform include, but are not limited to, the following:

1.  To demand, hold and generally deal with any monies, securities and other property which now or hereafter belong to me, or in which I may have an interest.

2.  To sign any note, check, security or other instrument, negotiable or nonnegotiable, whether or not the check or other instrument is drawn to the order of my Attorney, for deposit, discount, collection or otherwise.

3.  To write checks upon, or otherwise withdraw, all funds or account balances now or hereafter outstanding to my credit or to the credit of my Attorney, and to open accounts of whatever nature in my name or my Attorney's name.

4.  To vote in person or by proxy, to sell or otherwise dispose of, to cause to be registered in the name of a nominee selected by my Attorney, and to transfer, redeem, convert or exchange, any security that now belongs to me or may belong to me in the future or in which I may have an interest, and to make, execute and deliver any endorsement, assignment, certification, or other document in connection with any security.

*This document was prepared by Wharton, Aldhizer & Weaver, P.L.C.*

BK 1782 PG 0480

I may have an interest, and to make, execute and deliver any endorsement, assignment, certification, or other document in connection with any security.

5.     To buy, acquire or invest in property, real or personal, tangible or intangible, including without limitation any security, option, or other type of investment.

6.     To sell, encumber or lease any property, real or personal, buildings or other improvements or appurtenances to lands which now or hereafter belong to me, or in which I may have an interest, and to make, execute, acknowledge and cause to be recorded any and all deeds, contracts or other writings that may be necessary with respect to transactions involving such property.

7.     To apply for, receive and generally deal with any benefits from social security, Medicare, Medicaid or other governmental programs, or military or government service.

8.     To borrow or lend money or property, with or without security, and for such purposes to deliver or receive any documents that may be necessary or proper.

9.     To instruct any entity or person having custody or control of any assets of mine, or any assets in which I may have an interest, in any agency, fiduciary or other capacity, and I authorize that person or entity to rely upon such instructions.

10.    To pay all sums of money which may now or hereafter be owing by me, whether the obligation is incurred by me or by my Attorney; and to receive or give releases in connection with claims against me or in my favor.

11.    To commence, prosecute, mediate, arbitrate, discontinue, dismiss, compromise, defend, settle or appeal any or all actions or other legal proceedings which relate to my estate

-2-

BK 1782 PG 0481

or any part thereof, or related to any matter in which I or my estate may be in anywise
concerned.

12.    To have access to any safe deposit box registered in my name only, or with others,
and to remove or add to the contents thereof.

13.    To represent me in all tax matters: to prepare, sign, and file federal, state or local
income, gift, FICA and other tax returns of all kinds, claims for refunds, requests for extensions
of time, ruling requests, petitions to the Tax Court or other courts regarding tax matters, and any
and all other tax related documents, including, without limitation, receipts, offers, waivers,
consents (including, but not limited to, consents and agreements under Internal Revenue Code
sections 2032A, 2513 and 2652(a)(2), or any successor sections thereto), closing agreements and
any power of attorney form required by the Internal Revenue Service or other taxing authority
with respect to any tax periods; to pay taxes due, collect refunds, post bonds, receive confidential
information, and contest deficiencies determined by the Internal Revenue Service or other taxing
authorities; to exercise any elections I may have under federal, state or local tax laws; and
generally to represent me in all tax matters and proceedings of all kinds and for all periods before
all offices and officers of the Internal Revenue Service and any other taxing authority.

14.    To do any or all of the following to the extent I could do so if acting personally:
(i) to create any trust agreement, whether revocable or irrevocable, and whether funded or
unfunded, the beneficiaries of which are any charitable organization, myself, or any of my
descendants or their spouses; (ii) to terminate, revoke, modify or amend any trust agreement of
which I am the grantor, beneficiary or otherwise, whether created by my Attorney, myself, or any

-3-

BK 1782 PG 0482

third party, to the extent I could do so if acting personally; (iii) to remove any trustee and appoint any successor trustee of any trust agreement of which I am the grantor, beneficiary or otherwise, whether created by my Attorney, myself or any third party; and (iv) to transfer any property, real or personal, to any trustee under any trust agreement, whether revocable or irrevocable, and whether funded or unfunded, of which I am the grantor, beneficiary or otherwise, and to remove assets from any such trust on my behalf for any purpose, as my Attorney may deem appropriate.

15.    To make gifts of any amount on my behalf to any charitable organization, to my spouse and to any of my descendants and their spouses.

16.    To pay directly costs of tuition and medical costs for any of my descendants and their spouses.

17.    To disclaim the succession to any property, real or personal, or interest therein, to the extent allowed under applicable state law.

18.    To borrow against or obtain the cash surrender value of any of my life insurance policies, to transfer the ownership of any such policies to any party, including any trust, to change the beneficiaries named in any such policies and to cancel such policies.

19.    To appoint any individual or corporation as substitute attorney under this power of attorney with all of the powers and authority granted to my Attorney.

My Attorney shall be entitled to receive reasonable compensation for services rendered. My Attorney shall not be required to make any settlement of accounts to any court or person.

-4-

BK1782PG0474

Should any power granted to my Attorney hereunder be declared null and void by a court of competent jurisdiction, or should any power hereunder be revoked by me in another instrument, all other powers granted hereunder which have not been declared null and void or revoked shall remain valid, enforceable and in full effect.

I may hold assets or assets may be transferred to me that would not meet the prudent investor standard in Virginia as suitable legal investments. My Attorney may nevertheless retain the assets for as long as my Attorney considers appropriate even if the assets represent an overconcentration or do not meet the standard of prudence.

I hereby waive any self-dealing prohibitions that may exist under state law with respect to my spouse and any descendant of mine while such person is acting as my Attorney.

By the execution of this power of attorney, I hereby revoke all other powers of attorney previously granted by me.

This power of attorney shall not terminate upon my disability.

I hereby ratify and confirm all lawful acts done by my Attorney, by virtue hereof.

WITNESS my hand and seal this _ll^th_ day of _July_, 1998.

_____ (SEAL)
RICHARD E. AUSTIN

_____
Witness

_____
Witness

-5-

BK 1 7 8 2 PG 0 4 7 4

Should any power granted to my Attorney hereunder be declared null and void by a court of competent jurisdiction, or should any power hereunder be revoked by me in another instrument, all other powers granted hereunder which have not been declared null and void or revoked shall remain valid, enforceable and in full effect.

I may hold assets or assets may be transferred to me that would not meet the prudent investor standard in Virginia as suitable legal investments. My Attorney may nevertheless retain the assets for as long as my Attorney considers appropriate even if the assets represent an overconcentration or do not meet the standard of prudence.

I hereby waive any self-dealing prohibitions that may exist under state law with respect to my spouse and any descendant of mine while such person is acting as my Attorney.

By the execution of this power of attorney, I hereby revoke all other powers of attorney previously granted by me.

This power of attorney shall not terminate upon my disability.

I hereby ratify and confirm all lawful acts done by my Attorney, by virtue hereof.

WITNESS my hand and seal this 17th day of _July_ , 1998.

_____ (SEAL)
RICHRD E. AUSTIN

_____
Witness

_____
Witness

-8-

BK 1782 PG 0475

STATE OF VIRGINIA
COUNTY/CITY OF _____, to-wit:

The foregoing instrument was acknowledged before me in the jurisdiction aforesaid
this _____ day of _____, 1998, by RICHARD E. AUSTIN.

My commission expires _____.

_____
Notary Public

030374

-6-

BK I 782 PG 0476

Should any power granted to my Attorney hereunder be declared null and void by a court of competent jurisdiction, or should any power hereunder be revoked by me in another instrument, all other powers granted hereunder which have not been declared null and void or revoked shall remain valid, enforceable and in full effect.

I may hold assets or assets may be transferred to me that would not meet the prudent investor standard in Virginia as suitable legal investments. My Attorney may nevertheless retain the assets for as long as my Attorney considers appropriate even if the assets represent an overconcentration or do not meet the standard of prudence.

I hereby waive any self-dealing prohibitions that may exist under state law with respect to my spouse and any descendant of mine while such person is acting as my Attorney.

By the execution of this power of attorney, I hereby revoke all other powers of attorney previously granted by me.

This power of attorney shall not terminate upon my disability.

I hereby ratify and confirm all lawful acts done by my Attorney, by virtue hereof.

WITNESS my hand and seal this 17 day of _____, 1998.

_____ (SEAL)
RICHARD L. AUSTIN

_Stacy A. Austin_
Witness

_Rachel N. Morris_
Witness

-5-



5094500097  U-ARTON  M.DNIZER  HER                  300 1*02 19  JUL 16 '98  16:19

BK 1782PG0477

STATE OF VIRGINIA
COUNTY/CITY OF Charlottesville, to-wit:

The foregoing instrument was acknowledged before me in the jurisdiction aforesaid
this 17 day of July, 1998, by RICHARD E. AUSTIN.

My commission expires     My Commission Expires May 31, 1999

Laura Cielman
Notary Public

130174

BK1782PG0478

VIRGINIA:          IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF ALBEMARLE:

THIS DEED WAS PRESENTED, AND WITH CERTIFICATE ANNEXED, IS ADMITTED

TO RECORD ON Jan. 26          ,1999 . AT 10:59 O'CLOCK A. M.

| | | |
|---|---|---|
| STATE TAX | $ | (039) |
| LOCAL TAX | $ | (213) |
| TRANSFER FEE | $ | (212) |
| L.T.T.F. | $ 3.00 | (196) |
| VSLF | $ 1.00 | (145) |
| CLERK'S FEE | $ 16.00 | (301) |
| PLAT | $ | |
| SECT.58.1-802: | | |
| STATE TAX | $ | (038) |
| LOCAL TAX | $ | (220) |
| LOCAL TAX | $ | (223) |

TESTE:

SHELBY J. MARSHALL, CLERK

BY Janetta Mann

DEPUTY CLERK

TOTAL          $ 20.00

**EXHIBIT E—"2013 POA"**

THIS DOCUMENT WAS PREPARED BY:
William D. Tucker, III
Tucker Griffin Barnes
307 W. Rio Road
Charlottesville, VA., 22901
Tax Map and Parcel 41-42U3 and 2800

~Culpeper TMP~

*Return to:*
TUCKER GRIFFIN BARNES P.C
ATTORNEYS AT LAW
307 WEST RIO ROAD
CHARLOTTESVILLE, VIRGINIA 22901

## POWER OF ATTORNEY

130001471

**KNOW ALL MEN BY THESE PRESENTS;**

THAT I, **RICHARD E. AUSTIN**, of Earlysville, Virginia, do hereby make, constitute and appoint, and by these presents do make, constitute and appoint **STACEY A. AUSTIN**, of Earlysville, Virginia, my true and lawful attorney and in my name, place and stead, to act in my name, place and stead, with respect to signing any and all loan documents concerning the Refinance with StellarOne Bank, in the principal amounts of $900,000.00 property known as 709 James Madison Highway, Culpeper, Virginia and 910 Greenville Avenue, Staunton, Virginia.

I authorize my said Attorney in Fact to sign all trust notes and conveyances, with such covenants, warranties and assurances as my said Attorney in Fact shall deem expedient; to sign, seal, acknowledge and deliver any disclosure statements, settlement statements, affidavits, note, deed of trust, truth in lending, HUD-1 Settlement Statement, insurance notices, and such other documents as may be required in connection with the Refinance of the above-described property with StellarOne Bank; to sign and endorse checks payable to me or my account; and to accept and receive the sum of sums of money or other consideration which shall be coming to me or my account by reason of said loan; and to make, execute and perform all and every other act or acts, thing or things in law needful and necessary to be done in connection with said Refinance; as fully, largely and amply, to all intents and purposes, as I might or could do if acting personally.

Pursuant to the provisions of Section 11-9.1 of the 1950 Code of Virginia, as amended, "This Power of Attorney (of his authority) shall not terminate on disability of the principals." This Power of Attorney shall be deemed effective as of the date of

Gp 13000492
Culp 13000471

execution hereof, and shall terminate on February 28, 2014 and I hereby ratify and confirm all lawful acts done by my Attorney by virtue hereof.

000145

SIGNATURE ON THE FOLLOWING PAGE

WITNESS the following signatures and seals.

_____ (SEAL)
Richard E. Austin

STATE OF _____Virginia_____

CITY/COUNTY OF _____albemarle_____, to-wit:

I, the undersigned, a Notary Public in and for the City/County and State aforesaid, do hereby certify that Richard E. Austin whose name is signed to the foregoing instrument, have acknowledged the same before me in my City/County and State aforesaid.

GIVEN under my hand and seal this 28th day of February, 2013.

_____
Notary Public

My commission expires: 2/29/16

KELLY LYNN FAILLACE
NOTARY
PUBLIC
REG # 346807
MY COMMISSION
EXPIRES
2/29/2016
COMMONWEALTH OF VIRGINIA

INSTRUMENT #130001421
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
FEBRUARY 28, 2013 AT 02:15PM
JANICE J. CORBIN, CLERK
RECORDED BY: JLW

**EXHIBIT F—"STATE COURT ACTION COMPLAINT"**

VIRGINIA:

IN THE CIRCUIT COURT OF THE CITY OF STAUNTON

**UNION BANK & TRUST,**
**successor by merger to**
**STELLARONE BANK.**

and

**WILLIAM A. CASTERLINE, JR.,**
**JEREMY B. BOOT, and**
**MICHAEL A. HOWES,**
**Substitute Trustees,**

                       Plaintiffs,


                                        Case No.: _____

v.

**REA PARTNERSHIP-A, a Virginia**
**General Partnership,**

          Serve:  Richard E. Austin, General Partner
                  630 Tanners Lane
                  Earlysville, VA 22936
                  (County of Albemarle, Virginia)


      or

                  Richard E. Austin, General Partner
                  230 South Wayne Avenue
                  Waynesboro, VA 22980
                  (City of Waynesboro, Virginia)



and

**RICHARD E. AUSTIN,**

          Serve:  630 Tanners Lane
                  Earlysville, VA 22936
                  (County of Albemarle, Virginia)


      or

                  230 South Wayne Avenue
                  Waynesboro, VA 22980
                  (City of Waynesboro, Virginia)



and

**STACEY A. AUSTIN.**
Serve:  2532 S. Arlington Mill Dr., Apt. B
Arlington, VA 22206
(County of Arlington, Virginia)

and

**UNITED BANK,**
Serve:  Neil I. Title, Registered Agent
1840 Wilson Blvd., # 205
Arlington, VA 22216
(County of Arlington, Virginia)

and

**BARRY D. BENISHEK, Trustee,**
Serve:  2071 Chain Bridge Road
Vienna, VA 22182
(Fairfax County, Virginia)

and

**SCOTT RITTER, Trustee.**
Serve:  2071 Chain Bridge Road
Vienna, VA 22182
(Fairfax County, Virginia)

and

**REA DEVELOPMENT, INC.,**
Serve:  Richard E. Austin, Registered Agent
5 South Augusta Street
Staunton, VA 24401
(Augusta County, Virginia)

Defendants.

## COMPLAINT

COME NOW the plaintiffs, **UNION BANK & TRUST** ("Union") and **WILLIAM A.**

**CASTERLINE, JR., JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute**

**Trustees,** by and through undersigned counsel, and in support of their Complaint state as

follows:

### Nature of Action

1.      This is an action for, in part, declaratory relief and quiet title pertaining to a

certain Deed of Trust in favor of Union encumbering two (2) parcels of real property described

as follows:

a.      The "Staunton Parcel" commonly known as 910 Greenville Avenue,

Staunton, Virginia 24402 in the City of Staunton, Tax Map No. 2800, and more particularly

described as follows:

**Parcel Two:** All of the following piece or parcel of land, together with its improvements and
appurtenances thereunto belonging, located and being in the City of Staunton, County of
Augusta, Commonwealth of Virginia, and more particularly described as follows.

BEGINNING at a point on the sidewalk in the Westerly Line of Greenville Avenue, said point
marking a Southeasterly corner of land, now or formerly, of First & Merchants National Bank; and
running thence, with said line of Greenville Avenue
1) S. 17° 08' E., 146.90' to an iron, a corner to the land, now or formerly, of Virginia Bottling
Corporation; thence, with the Northerly line of Virginia Bottling Corporation
2) S. 73°40' W, 200.00' to an iron in the Easterly line of the land, now or formerly, of Osbourne;
thence, with the Easterly line of Osbourne
3) N. 17°08' W., 146.90' to an iron, a corner of land, now or formerly, of First & Merchants
National Bank; thence, with the Southerly line of First & Merchants National Bank
4) N. 73°40' E., 200.00' to the point of beginning; and containing 29,377 square feet of land, more
or less.

BEING the same property conveyed to REA Partnership-A, a Virginia general partnership, by
deed from McDonald's Corporation, a Delaware corporation, successor in interest by Merger to
Franchise Realty Interstate Corporation, a Illinois corporation, dated April 11, 1989, recorded April
28, 1989 in the Clerk's Office of the Circuit Court of the City of Staunton, Virginia, in Deed Book
294, page 102.

and:

b.      The "Culpeper Parcel" commonly known as 709 James Madison

Highway, Culpeper, VA 22701 in Culpeper County, Tax Map No. 41-42U3, and more

particularly described as follows: [Legal description on following page.]

**Parcel One:** All that certain lot or parcel of land, with all buildings and improvements thereon, and appurtenances thereunto belonging, situate, lying and being on the north side of U.S. Route 15-29 Business, in the Town and County of Culpeper, Virginia, in East Fairfax Magisterial District, and known as "Out Parcel #3" on plat of Dominion Square Shopping Center, recorded among the land records of Culpeper County, Virginia, in Large Plat Book 3, pages 38 and 39, and being more fully described on a plat by Barry L. Wissinger, CLS, dated February 24, 1989, a copy of which is recorded in the aforesaid County in Deed Book 409, page 71.

BEING the same property conveyed to REA Partnership-A, a Virginia general partnership, by deed from Aston-Culpeper, a North Carolina limited partnership, dated March 10, 1989, recorded March 17, 1989 in the aforesaid Clerk's Office in Deed Book 409, page 66.

(the Staunton Parcel and Culpeper parcel may be collectively referred to as the "Properties").

2.      Union's Deed of Trust should be deemed a valid and enforceable first priority lien

encumbering the entire fee simple interest in the Properties.

### Parties and Certain Defined Terms

3.      Plaintiff Union has an interest in the Properties by virtue of being the current

beneficiary and noteholder by way of merger with StellarOne Bank under that certain Credit

Line Deed of Trust dated February 28, 2013 from REA Partnership-A to Dale V. Clark and

Douglas D. Callaway, Trustees, in the maximum principal amount of Nine Hundred Thousand

and 00/100 Dollars ($900,000.00) for the benefit of StellarOne Bank and encumbering the

Properties, said Deed of Trust being recorded on March 1, 2013 in the Clerk's Office of the

Circuit Court of the City of Staunton as Instrument No. 130000493 and in the Clerk's Office of

the Circuit Court of Culpeper County as Instrument No. 130001472 (a copy of the "2013 Union

Deed of Trust" is attached as **Exhibit A**).

4.      Plaintiffs William A. Casterline, Jr., Jeremy B. Boot, and Michael A. Howes

(collectively the "Substitute Trustees"), each a Virginia resident, are the Substitute Trustees

under the 2013 Union Deed of Trust by way of those two (2) Deeds of Appointment of

Substitute Trustees dated March 18, 2015 and recorded on March 30, 2015, in the Clerk's Office

of the Circuit Court of the City of Staunton as Instrument No. 150000561 and on March 27,

2015, in the Clerk's Office of the Circuit Court of Culpeper County as Instrument No. 150001520 (copies of the "Substitution of Trustees" are attached as **Exhibit B**).

5.    Defendant REA Partnership-A ("REA Partnership") is a Virginia general partnership and has an interest in this matter and the Properties by way of being the record title owner in fee simple of: (i) the Staunton Parcel through that certain Deed from McDonald's Corporation dated April 11, 1989, and recorded on April 28, 1989, in the Clerk's Office of the Circuit Court of the City of Staunton in Deed Book 294, page 102 (the "Staunton Parcel Deed"); and (ii) the Culpeper Parcel through that certain Deed from Aston-Culpeper dated March 10, 1989, and recorded on March 17, 1989 in the Clerk's Office of the Circuit Court of Culpeper County in Deed Book 409, page 66 (the "Culpeper Parcel Deed").

6.    Defendant REA Partnership has a further interest in this matter and the Properties by way of being the grantor under the 2013 Union Deed of Trust.

7.    Defendant Richard E. Austin ("Richard"), a Virginia resident, has an interest in this matter by way of being a borrower under that certain Promissory Note dated February 28, 2013, held by Union (the "2013 Union Secured Note"), said 2013 Secured Note being the underlying debt instrument directly pertaining to the 2013 Union Deed of Trust. A copy of the 2013 Union Secured Note is attached as **Exhibit C**.

8.    Defendant Stacey A. Austin ("Stacey") a Virginia resident, has an interest in this matter by way of being a borrower under the 2013 Union Secured Note.

9.    Defendants Richard and Stacey are also borrowers under that certain Promissory Note dated February 13, 2013 held by Union (the "2013 Union Cross-Collateralized Loan"), said Cross-Collateralized Loan being cross-collateralized with the 2013 Union Secured Note. A copy of the 2013 Union Cross-Collateralized Note is attached as **Exhibit D**.

10.   Defendants Richard and Stacey were a married couple at all times relevant to this action up through the date of their divorce on December 3, 2014.

11.   United Bank, a Virginia corporation, may have an interest in the Staunton Parcel by way of being the beneficiary under that certain Credit Line Deed of Trust dated December 30, 2011 from REA Partnership-A to Barry D. Benishek and Scott Ritter, Trustees, in the maximum principal amount of Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00) for the benefit of United Bank and encumbering the Properties, said Deed of Trust being recorded in the Clerk's Office of the Circuit Court of the City of Staunton as Instrument No. 120000167 (a copy of the "2012 United Bank Deed of Trust" is attached as **Exhibit E**).

12.   Barry D. Benishek and Scott Ritter, each a Virginia resident, may have an interest in the Staunton Parcel by way of being the trustees under the 2012 United Bank Deed of Trust.

13.   Defendant REA Development, Inc. ("REA Development"), a Virginia corporation, is owned by Richard and, upon information and belief, may have a leasehold or other interest in the Properties.

### Jurisdiction

14.   Personal jurisdiction over the defendants in this action is appropriate because they (a) are citizens and residents of the Commonwealth of Virginia; and/or (b) have an interest in real property located in the Commonwealth of Virginia.

15.   Venue is appropriate in this Court pursuant to Virginia Code §8.01- 261 because (a) this action concerns real property which is located in the City of Staunton, Virginia; and/or (b) the defendants conduct substantial business activities in the City of Staunton, Virginia.

### Facts/Chain of Title

#### Acquisition of Properties

16.     Defendant REA Partnership became the title owner of the Staunton Parcel on or about April 11, 1989 by way of the Staunton Parcel Deed.

17.     Defendant REA Partnership became the title owner of the Culpeper Parcel on or about March 10, 1989 by way of the Culpeper Parcel Deed.

18.     Richard was at all times relevant to this action, and still remains, a general partner and controlling party for REA Partnership.

19.     REA Partnership, REA Development, and/or Richard have, and continue to, own and operate Arby's restaurant franchises at each of the Properties.

#### Global Power of Attorney

20.     On or about July 17, 1998, Richard executed a Power of Attorney appointing Stacey as his true and lawful attorney-in-fact.  A copy of the "1998 POA" is attached as **Exhibit F**.

21.     The 1998 POA was recorded in the Clerk's Office of the Circuit Court of Albemarle County on January 26, 1999 in Deed Book 1782, page 0470.

#### Credit Line from United Bank

22.     United Bank extended a credit line to Richard, Stacey, and/or REA Partnership on or about December 30, 2011 in the maximum principal amount of Nine Hundred Thousand and 00/100 Dollars ($900,000.00)( the "United Bank Loan").

23.     The 2011 United Bank Loan was secured, in part, by way of the 2012 United Bank Deed of Trust.

24.     The 2012 United Bank Deed of Trust was signed on behalf of REA Partnership by Stacey in her capacity as general partner and by Stacey as the attorney in fact for Richard under the 1998 POA.

25.     Upon information and belief, funds disbursed under the United Bank Loan were used by Richard, REA Partnership, and/or REA Development in the ownership and operation of the businesses located on the Properties.

### Specific Power of Attorney

26.     On or about February 28, 2013, Richard executed a second Power of Attorney appointing Stacey as his true and lawful attorney-in-fact for the purpose of executing documents pertaining to the closing of the loan underlying the 2013 Union Secured Note including, without limitation, executing the 2013 Union Deed of Trust. A copy of the "2013 POA" is attached as **Exhibit G**.

27.     The 2013 POA was recorded in the Clerk's Office of the Circuit Court of Culpeper County on February 28, 2013, as Instrument No. 130001471.

28.     Kelly Lynn Faillance, the notary public before whom Richard executed the 2013 POA, is an employee for the law firm of Tucker Griffin Barnes P.C., the settlement agent that closed the loan underlying the 2013 Union Secured Note.

### Loan from Union

29.     On or about February 28, 2013, Union (thorough its predecessor) extended a credit line to Richard and Stacey in the maximum principal amount of Nine Hundred Thousand and 00/100 Dollars ($900,000.00) by way of the 2013 Union Secured Note.

30.     Payment under the 2013 Union Secured Note is secured by the 2013 Union Deed of Trust.

31.    The 2013 Union Secured Note is signed by Stacey individually and by Stacey as the attorney in fact for Richard under the 1998 POA and the 2013 POA.

32.    The 2013 Union Deed of Trust is signed by Stacey as attorney in fact for Richard as general partner for REA Partnership.

33.    Stacey was also a partner of REA Partnership at the time the 2013 Union Deed of Trust was executed and given.

34.    The sum of Forty Five Thousand Two and 78/100 Dollars ($45,002.78) was paid to United Bank from the funds disbursed at closing under the 2013 Union Secured Note in order to satisfy the lien of United Bank under the 2012 United Bank Deed of Trust.

35.    From February 28, 2013 through November 29, 2013, the principal amount of Six Hundred Forty Nine Thousand Eight Hundred Seventy Four and 90/100 Dollars ($649,874.90) was disbursed by Union under the loan memorialized by the 2013 Union Secured Note (the "Disbursed Funds").

36.    The Disbursed Funds, in addition to paying United Bank and paying down a portion of the loan underlying the 2013 Union Cross-Collateralized Loan, were used, without limitation for improvements and remodeling to the Arby's restaurants located on the Properties.

37.    A portion of the Disbursed Funds was paid to REA Development, a company owned by Richard.

38.    Prior to the loan going into default, several payments were made to the loan underlying the 2013 Union Secured Note.  Most of these payments came from REA Development, a company owned by Richard.

Default and Alleged Forgery

39.    The loan underlying the 2013 Union Secured Note is in default.

40.    The loan underlying the 2013 Union Cross-Collateralized Loan is also in default.

41.     Union seeks to enforce its lien created by the 2013 Union Deed of Trust by foreclosing on the Properties.

42.     Union has appointed the Substitute Trustees under the Substitution of Trustees to conduct the foreclosure sales of the Properties.

43.     In response to learning that Union intended to initiate the foreclosure process, Richard asserts that the 1998 POA and 2013 POA are products of forgery and, as a result, Richard further alleges that the 2013 Union Deed of Trust is unenforceable.

44.     Richard maintains his claims to forgery despite (a) Richard executing a "Revocation of Powers of Attorney" on June 24, 2013, and causing the same to be recorded on October 24, 2013, as Instrument No. 032749890002 in the Clerk's Office of the Circuit Court of Albemarle County, said Revocation of Powers of Attorney acknowledging that Stacey was in fact Richard's attorney-in-fact without reference to any defects in the instruments; and (b) Richard executing the 2013 POA before a notary public employed by the settlement agent for the closing of the loan underlying the 2013 Union Secured Note.

45.     An actual controversy exists due to the allegations levied by Richard, thus creating clouds on title interfering with Union's rights in the Properties.

### Count I-Quiet Title

46.     The allegations set forth in the above paragraphs 1 through 45 of this Complaint are incorporated herein.

47.     The 2013 Union Deed of Trust creates a valid and enforceable first priority lien encumbering the Properties.

48.     The 2013 Union Deed of Trust was validly executed on behalf of REA Partnership.

49.     Stacey was lawfully empowered by the 1998 POA and the 2013 POA to execute
the 2013 Union Deed of Trust as Richard's attorney in fact.

50.     Stacey was lawfully empowered by the 1998 POA and the 2013 POA to execute
the 2013 Union Secured Note as Richard's attorney in fact.

51.     Further, Stacey was independently authorized as a general partner of REA
Development to execute the 2013 Union Deed of Trust on behalf of REA Partnership.

52.     Richard's allegations pertaining to the forgeries of the 1998 POA and 2013 POA
constitute a potential cloud on title which Union requests this Court remove as an impediment to
the enforcement of the 2013 Union Deed of Trust and so as to allow clear title to pass to a future
purchaser.

53.     Plaintiffs have no adequate remedy at law.

### Count II-Declaratory Relief

54.     The allegations set forth in the above paragraphs 1 through 53 of this Complaint
are incorporated herein.

55.     The 2013 Union Deed of Trust is and was intended to be a valid and enforceable
first priority lien against the Properties.

56.     The facts as set forth above demonstrate that Union should have a valid and
enforceable first priority lien against the Properties.

57.     An actual and justiciable controversy exists regarding the validity and enforceability
of the 2013 Union Deed of Trust.

58.     A judicial determination and declaration is therefore necessary to declare that the
2013 Union Deed of Trust is a valid and enforceable first priority lien encumbering the Properties.

### Count III-Equitable Lien

59.     The allegations set forth in the above paragraphs 1 through 45 of this Complaint are incorporated herein.

60.     In the alternative, under the circumstances described herein, it would be improper and inequitable for REA Partnership to obtain an interest in the Properties free and clear of any lien or encumbrance in favor of Union.

61.     REA Partnership intended to encumber the Properties with the 2013 Union Deed of Trust in exchange for a loan that benefited it, as well as Richard and Stacey, its general partners.

62.     Equity and the ends of justice require that this Court impose and establish an equitable lien securing the loan underlying the 2013 Union Secured Note against the Properties in their entirety.

### Count IV-Equitable Subrogation

63.     The allegations set forth in the above paragraphs 1 through 45 of this Complaint are incorporated herein.

64.     In the alternative, a valid recorded and subsisting lien against the Properties existed at the time the 2013 Union Deed of Trust was executed.

65.     The Disbursed Funds were used, in part, to satisfy one or more prior liens encumbering the Properties.

66.     Union disbursed the Disbursed Funds in reliance upon the 2013 Union Deed of Trust encumbering the Properties by way of a valid and enforceable first priority lien against the Properties.

67.     Consistent with reason and justice, Union is entitled to be equitably subrogated to the lien position and extent of the lien that existed at the time of the execution of the 2013 Union

Deed of Trust because Union should not be prejudiced or placed in a worse position than it occupied immediately prior to execution of the 2013 Union Deed of Trust.

68.    No remedy at law exists whereby plaintiff can establish its lien as intended on the subject property.

### Count V-Constructive Trust

69.    The allegations set forth in the above paragraphs 1 through 45 of this Complaint are incorporated herein.

70.    In the alternative, to the extent that defendants Richard, Stacey, REA Partnership, and/or REA Development may have obtained possession of the proceeds of the loan secured by the 2013 Union Deed of Trust or the benefits thereof without the Properties being subject to the lien established by the 2013 Union Deed of Trust, defendants Richard, Stacey, REA, Partnership, and/or REA Development have been unjustly enriched.

71.    The Properties should be held in a constructive trust for the benefit of Union and/or its successors and assigns.

72.    The facts and circumstances surrounding the execution of the 2013 Union Deed of Trust and the application of the Disbursed Funds require a declaration that a constructive trust exists on the Properties and the Disbursed Funds, or the benefits thereof, created, arising and effective as of the date of the 2013 Union Deed of Trust, as a matter of equity, in order to prevent a failure of justice.

73.    It is necessary, equitable, and appropriate that this Court impose a constructive trust for the benefit of Union, its successors, and/or assigns in order to prevent the injustice that would otherwise ensue.

### Count VI-Unjust Enrichment

74.    The allegations set forth in the above paragraphs 1 through 45 and 69 through 73 of this Complaint are incorporated herein.

75.    In the alternative and in conjunction with Count V of this Complaint, Union provided its loan with the understanding that the loan would be secured by a valid and enforceable first priority Deed of Trust lien on the entire fee simple interest in the Properties.

76.    The Disbursed Funds were used in a manner to benefit defendants Richard, Stacey, REA Partners, and/or REA Development, including, without limitation, for improvements and remodeling of the Properties and the businesses located thereon, and each of these defendants accepted these proceeds with full knowledge of such benefits.

77.    Defendants Richard, Stacey, REA Partners, and/or REA Development would be unjustly enriched if this Court allows them, or any one or more of them, to enjoy the full benefits of the Disbursed Funds without the intended security in favor of Union or otherwise.

78.    Defendant REA Partners, as well as Richard and Stacey as general partners thereof, would be unjustly enriched if this Court allows them to retain an interest in the Properties unencumbered by the 2013 Union Deed of Trust.

79.    This Court should further order these defendants to make restitution to Union of their shares of the Disbursed Funds.

### Count VII-Specific Performance

80.    The allegations set forth in the above paragraphs 1 through 45 of this Complaint are incorporated herein.

81.    In the alternative, equity and the ends of justice require that this Court direct Richard and/or an authorized party for REA Partners to execute the 2013 Union Deed of Trust or, in the alternative, appointing Union's Counsel as Special Commissioner for the sole purpose

to execute the 2013 Union Deed of Trust on behalf of REA Partners, and that this Court enter an

Order, to be recorded, establishing the 2013 Union Deed of Trust as a valid and enforceable first

priority lien against the Properties in their entirety effective *nunc pro tunc* to February 28, 2013.

### Count VIII-Equity Regards As Done Which Ought To Be Done

82.    The allegations set forth in the above paragraphs 1 through 45 of this Complaint

are incorporated herein.

83.    The parties intended that Union occupy a first lien position against the Properties

by way of the 2013 Union Deed of Trust.

84.    Under the circumstances, the Court should follow the maxim that "equity regards

as done that which ought to be done" and enter an Order validating the 2013 Union Deed of

Trust as a valid and enforceable first priority lien encumbering the entire fee simple interest in

the Properties.

### RELIEF REQUESTED

WHEREFORE, plaintiff's **UNION BANK & TRUST** and **WILLIAM A.**

**CASTERLINE, JR., JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute**

**Trustees,** pray that this Court enter an Order:

a)    quieting title in favor of Union under the 2013 Union Deed of Trust;

b)    declaring that the 2013 Union Deed of Trust is a valid and enforceable

first priority lien on the entire fee simple interest in the Properties, *nunc pro tunc* to February 28,

2013;

c)    in the alternative, imposing and subjecting the Properties to an equitable

lien for purposes of securing the loan underlying the 2013 Union Secured Note, *nunc pro tunc* to

February 28, 2013;

d) in the alternative, equitably subrogating the 2013 Union Deed of Trust to the position occupied by the lien it paid off in full, *nunc pro tunc* to February 28, 2013;

e) in the alternative, imposing a constructive trust in favor of Union, its successors, and assigns on defendants' interests in the Properties and the Disbursed Funds, and the benefits or proceeds thereof;

f) in the alternative, and in conjunction with a constructive trust, ruling that the defendants Richard, Stacey, REA Partners, and/or REA Development have been unjustly enriched and ordering them to make restitution of their shares of the Disbursed Funds;

g) in the alternative, ordering specific performance and directing that Richard and/or an authorized party for REA Partners execute the 2013 Union Deed of Trust or, in the alternative, appointing Union's Counsel as Special Commissioner for the sole purpose to execute the 2013 Union Deed of Trust on behalf of REA Partners, and that this establish the 2013 Union Deed of Trust as a valid and enforceable first priority lien against the Properties in their entirety effective nunc *pro tunc* to February 28, 2013;

h) in the alternative, invoking the Court's equitable powers to ensure that justice is accomplished and that an equitable result is achieved by following the maxim "equity will do what should have been done" and ordering that the 2013 Union Deed of Trust constitutes a valid and enforceable first priority lien on the entire fee simple interest in the Properties;

i) awarding Union its costs for these proceedings including, without limitation, its attorneys' fees pursuant to the underlying loan documents at issue; and

j) awarding Union such other and further relief as the nature of its case may require and to this Court shall seem proper.

Respectfully submitted,

UNION BANK & TRUST, and
WILLIAM A. CASTERLINE, JR.,
JEREMY B. BOOT, and MICHAEL A.
HOWES, Substitute Trustees

Of Counsel

Samuel J. Kaufman (VSB No. 48442)
OWEN & OWENS PLC
15521 Midlothian Turnpike, Suite 300
Midlothian, VA 23113
804-594-1911 (Office)
804-594-0455 (Facsimile)
skaufman@owenowens.com
-Counsel for Plaintiffs-

UNION BANK & TRUST, successor by merger to STELLARONE BANK, and WILLIAM A. CASTERLINE, JR.,
JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute Trustees,  v.  REA PARTNERSHIP-A, a Virginia,
General Partnership,

EXHIBIT A - 2013 Union Deed of Trust

PG0004 MAR-1 13

*Return to:*
TUCKER GRIFFIN BARNES P.C
ATTORNEYS AT LAW
307 WEST RIO ROAD
CHARLOTTESVILLE, VIRGINIA 22901

130000493

Pursuant to Section 58.1-803D of the Code of Virginia, this is to certify that this document represents the refinancing of an existing Deed of Trust in the Clerk's Office of the Circuit Court of Culpeper County (City), Virginia, in Deed Book ____, page ____ or as instrument # 120000434 on which tax was paid.

WHEN RECORDED MAIL TO:
STELLARONE BANK, COMMERCIAL LENDING CHARLOTTESVILLE, 105 ARBOR DRIVE,
CHRISTIANSBURG, VA 24073

Tax Map Reference No(s): 41-42U3; 2800

Page 1

This Deed of Trust prepared by:   LOAN CLOSING, STELLARONE BANK



"0002131754%0340%022813%*##*####%*####*###*"

## DEED OF TRUST

### THIS IS A CREDIT LINE DEED OF TRUST

Maximum aggregate amount of principal
to be secured hereby at any one time: $900,000.00

Name and address of Noteholder secured hereby:
STELLARONE BANK
105 ARBOR DRIVE
CHRISTIANSBURG, VA 24073

THIS DEED OF TRUST is dated February 28, 2013, among REA PARTNERSHIP-A, a Virginia general partnership, whose address is 630 TANNERS LANE, EARLYSVILLE, VA  22936 ("Grantor"); STELLARONE BANK, whose address is COMMERCIAL LENDING CHARLOTTESVILLE, 105 ARBOR DRIVE, CHRISTIANSBURG, VA 24073 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Dale V CLARK, a resident of Virginia, whose address is 105 Arbor Drive, Christiansburg, VA  24073 and DOUGLAS D CALLAWAY, a resident of Virginia, whose address is 590 Peter Jefferson Parkway, Suite 250, Charlottesville, VA  22911 ("Grantee," also referred to below as "Trustee"), either of whom may act.

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys, transfers, encumbers and pledges and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in TOWN AND COUNTY OF CULPEPER AND CITY OF STAUNTON, Commonwealth of Virginia:

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as   709 JAMES MADISON HIGHWAY, CULPEPER, VA 22701; 910 GREENVILLE AVENUE, STAUNTON, VA 24401. The Real Property Tax Map Reference No(s) is/are 41-42U3; 2800.

CROSS-COLLATERALIZATION. In addition to the Note, this Deed of Trust secures all obligations, debts

Pursuant to Section 58.1-803D of the Code of Virginia, this is to certify that this document represents the refinancing of an existing Deed of Trust in the Clerk's Office of the Circuit Court of Staunton County (City), Virginia, in Deed Book ____, page ____ or as instrument # 120000073 on which tax was paid.

PG0005 MAR-1 13

## DEED OF TRUST
### (Continued)

Loan No: 2131764                                                              Page 2

and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of
them, as well as all claims by Lender against Borrower and Grantor or any one or more of them,
whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note,
whether voluntary or otherwise, whether due or not due, direct or indirect, determined or
undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be
liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party
or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by
any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may
become otherwise unenforceable.

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the indebtedness including, without
limitation, a revolving line of credit, under which Lender may make advances to Borrower so long as
Borrower complies with all the terms of the Note.

**FUTURE ADVANCES.** In addition to the amounts specified in the Note, this Deed of Trust also secures
future advances.

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed
of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property
and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code
security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN
THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE   (A)   PAYMENT OF THE
INDEBTEDNESS AND   (B)   PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE
RELATED DOCUMENTS, AND THIS DEED OF TRUST.   THIS DEED OF TRUST IS GIVEN AND
ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:  (a)  Grantor has the full
power, right, and authority to enter into this Deed of Trust and to hypothecate the Property;  (b) the
provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other
instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or
order applicable to Grantor;  (c) Grantor has established adequate means of obtaining from Borrower on
a continuing basis information about Borrower's financial condition; and  (d) Lender has made no
representation to Grantor about Borrower (including without limitation the creditworthiness of
Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower and
Grantor shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and
Borrower and Grantor shall strictly perform all their respective obligations under the Note, this Deed of
Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's
and Grantor's possession and use of the Property shall be governed by the following provisions:

> **Possession and Use.** Until the occurrence of an Event of Default, Grantor may  (1)  remain in
> possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  acting
> as Lender's agent, collect the Rents from the Property.

> **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform
> all repairs, replacements, and maintenance necessary to preserve its value.

PG0006 MAR -1 13

**DEED OF TRUST**

Loan No: 2131754                                    (Continued)                                    Page 3

---

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to

PG0007 MAR-I 13

**DEED OF TRUST**
Loan No: 2131754                          **(Continued)**                                    Page 4

the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Virginia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

PG0008 MAR-1 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                                              Page 5

Notice of Construction. Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this Deed of Trust.

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the

PG0009 MAR-113

**DEED OF TRUST**
(Continued)

then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants generally that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in

PG 00 I 0  HAR -1 13

**DEED OF TRUST**
**(Continued)**

writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any

PG00 | | MAR~1 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                              Page 8

Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to

PG 0 0 1 2 MAR - 1 13

**DEED OF TRUST**
Loan No: 2131754                                   **(Continued)**                                   Page 9

make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default In Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security Interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business or the death of any partner, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

PG 00 1 3 MAR -1 13

## DEED OF TRUST
### (Continued)

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay. This right is in addition to all other rights given to holders of promissory notes under Title 55 of the Code of Virginia.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. In any foreclosure by notice and sale, the advertisement of sale by the Trustee shall be published once a week for two successive weeks in a newspaper having general circulation in a city or county where the Real Property, or any part of it, is located. Grantor expressly waives and releases any requirement or obligation that Lender or Trustee present evidence or otherwise proceed before any court or other judicial or quasi-judicial body as a precondition to or otherwise incident to the exercise of the powers of sale authorized by this Deed of Trust. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided in the Note, and all taxes and assessments due upon the Property at time of sale, and to retain as compensation a reasonable Trustee's commission; (b) second, to pay the whole amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in Trustee's hands are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the Property, less costs and expenses of obtaining possession.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the

PG00 | 4 HAR-1 13

**DEED OF TRUST**
(Continued)

Loan No: 2131754                                                                 Page 11

proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either  (1)  pay a reasonable rental for the use of the Property, or  (2)  vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, a reasonable Trustee's commission and reasonable attorney fees incurred by the Trustee in performing its duties under the Deed of Trust, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee (and each of them if more than one) shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor:  (a) join in preparing and filing a map

PG0015 MAR-1 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                                                           Page 12

---

or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which he or she resides, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ADDENDUM TO FORECLOSURE.** IN THE EVENT TRUSTEES ARE INSTRUCTED TO PROCEED WITH FORECLOSURE BUT THE PROPERTY IS NOT SOLD THEN TRUSTEES ACTING HEREUNDER SHALL BE ENTITLED TO COMPENSATION FOR SERVICES IN THE AMOUNT OF TWO AND ONE-HALF PERCENT (2 1/2%) OF THE THEN OUTSTANDING INDEBTEDNESS SECURED BY THIS DEED OF TRUST.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) Grantor has the full

PG 0 0 1 6 MAR-1 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                        Page 13

power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (b) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (c) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (d) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the Commonwealth of Virginia.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the applicable courts for MONTGOMERY County, Commonwealth of Virginia.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of

PG 0 0 1 7  MAR-1 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                              Page 14

---

this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the Commonwealth of Virginia as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means STELLARONE BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means RICHARD E. AUSTIN, BY STACEY A. AUSTIN, ATTORNEY-IN FACT; and STACEY A. AUSTIN and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

PG 0 0 I 8 MAR-I 13

**DEED OF TRUST**
**(Continued)**

Loan No: 2131754                                                                    Page 15

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means REA PARTNERSHIP-A.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means STELLARONE BANK, its successors and assigns.

**Note.** The word "Note" means ANY NOTE, CREDIT AGREEMENT, OR ANY OTHER OBLIGATIONS OR RELATED DOCUMENTS, TOGETHER WITH ALL RENEWALS OF, EXTENSIONS OF, MODIFICATIONS OF, CONSOLIDATIONS OF AND SUBSTITUTIONS FOR THE "NOTE" OR RELATED DOCUMENTS. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed

PG0019 MAR-113

## DEED OF TRUST
### (Continued)

Loan No: 2131754                                                      Page 16

to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Dale V Clark, whose address is 105 Arbor Drive, Christiansburg, VA   24073 and Douglas D Callaway, whose address is 590 Peter Jefferson Parkway, Suite 250, Charlottesville, VA  22911 and any substitute or successor trustees.  If more than one person is named as trustee, the word "Trustee" means each such person.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.**

**THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

PG0020 MAR-1 13

## DEED OF TRUST
### (Continued)

Loan No: 2131754                                                 Page 17

**GRANTOR:**

REA PARTNERSHIP-A

*Richard E Austin by Stacey A. Austin Attorney In Fact*

By: _____ (Seal)
    RICHARD  E.  AUSTIN,  BY  STACEY  A.  AUSTIN,
    ATTORNEY  IN  FACT,  General  Partner  of  REA
    PARTNERSHIP-A

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF _VIRGINIA_                   )
                                     ) SS
COUNTY OF _ALBEMARLE_            )

On this ___28th___ day of ___February___, 20 _13_, before me, the
undersigned Notary Public, personally appeared RICHARD E. AUSTIN, BY STACEY A. AUSTIN,
ATTORNEY IN FACT, General Partner of REA PARTNERSHIP-A, and known to me to be a partner or
designated agent of the partnership that executed the Deed of Trust and acknowledged the Deed of
Trust to be the free and voluntary act and deed of the partnership, by authority of statute or its
Partnership Agreement, for the uses and purposes therein mentioned, and on oath stated that he or she
is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the
partnership.

By _____       Residing at _Albemarle County VA_

Notary Public in and for _Virginia_      My commission expires _2/28/17_

                                          My registration number is _101830_

*[Notary Seal: KIMBERLY K. RICHARDSON, NOTARY PUBLIC, REG# 101830, MY COMMISSION EXPIRES 2/28/2017, COMMONWEALTH OF VIRGINIA]*

LASER PRO Lending, Ver. 12.4.0.003  Copr. Harland Financial Solutions, Inc. 1997, 2013.   All Rights
Reserved.  - VA  c:\CFI\LPL\G01.FC  TR-49878  PR-268

PG 0 0 2 1  MAR -1 13

## SCHEDULE A

**Parcel One:** All that certain lot or parcel of land, with all buildings and improvements thereon, and appurtenances thereunto belonging, situate, lying and being on the north side of U.S. Route 15-29 Business, in the Town and County of Culpeper, Virginia, in East Fairfax Magisterial District, and shown as "Out Parcel #3" on plat of Dominion Square Shopping Center, recorded among the land records of Culpeper County, Virginia, in Large Plat Book 3, pages 38 and 39, and being more fully described on a plat by Barry L. Wissinger, CLS, dated February 24, 1989, a copy of which is recorded in the aforesaid County in Deed Book 409, page 71.

BEING the same property conveyed to REA Partnership-A, a Virginia general partnership, by deed from Aston-Culpeper, a North Carolina limited partnership, dated March 10, 1989, recorded March 17, 1989 in the aforesaid Clerk's Office in Deed Book 409, page 66.

**Parcel Two:** All of the following piece or parcel of land, together with its improvements and appurtenances thereunto belonging, located and being in the City of Staunton, County of Augusta, Commonwealth of Virginia, and more particularly described as follows:

BEGINNING at a point on the sidewalk in the Westerly Line of Greenville Avenue, said point marking a Southeasterly corner of land, now or formerly, of First & Merchants National Bank; and running thence, with said line of Greenville Avenue
1) S. 17° 08' E., 146.90' to an iron, a corner to the land, now or formerly, of Virginia Bottling Corporation; thence, with the Northerly line of Virginia Bottling Corporation
2) S. 73°40' W, 200.00' to an iron in the Easterly line of the land, now or formerly, of Osbourne; thence, with the Easterly line of Osbourne
3) N. 17°08' W., 146.90' to an iron, a corner of land, now or formerly, of First & Merchants National Bank; thence, with the Southerly line of First & Merchants National Bank
4) N. 73°40' E., 200.00' to the point of beginning; and containing 29,377 square feet of land, more or less.

BEING the same property conveyed to REA Partnership-A, a Virginia general partnership, by deed from McDonald's Corporation, a Delaware corporation, successor in interest by Merger to Franchise Realty Interstate Corporation, a Illinois corporation, dated April 11, 1989, recorded April 28, 1989 in the Clerk's Office of the Circuit Court of the City of Staunton, Virginia, in Deed Book 294, page 102.

FOR RECORDING PURPOSES ONLY, THIS PROPERTY IS LOCATED
50% IN THE COUNTY OF CULPEPER, AND 50% IN THE CITY OF
STAUNTON.

REA by Saa

UNION BANK & TRUST, successor by merger to STELLARONE BANK, and WILLIAM A. CASTERLINE, JR.,
JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute Trustees,  v.  REA PARTNERSHIP-A, a Virginia,
General Partnership,

EXHIBIT B – Substitution of Trustees

150001520

Prepared By and Return To:                                    Culpeper County
William H. Casterline, Jr., Esquire, VSB #16277
Blankingship & Keith, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia  22030
703-691-1235

Tax Map Number: 41-42U3

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

THIS DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES, dated the 18th day of March, 2015, by and between **UNION BANK & TRUST**, successor by merger to **STELLARONE BANK**, Grantor, **REA PARTNERSHIP-A**, a Virginia General Partnership, original Grantor for indexing purposes; Dale V. **CLARK**, and Douglas D. **CALLAWAY**, original Trustees for indexing purposes; and William H. **CASTERLINE, JR.**, Jeremy B. **ROOT**, and Michael A. **HOWES**, all with a business address of 4020 University Drive, Suite 300, Fairfax, Virginia 22030, Substitute Trustees, any of whom may act, Grantees.

### WITNESSETH:

WHEREAS, by a certain Credit Line Deed of Trust (the "Deed of Trust") dated February 28, 2013, and recorded as Instrument Number 130001472 in the Clerk's Office (the "Clerk's Office") of the Circuit Court of Culpeper County, Virginia, REA Partnership-A, a Virginia General Partnership, conveyed all of its rights, title and interest in and to certain real and personal property, more particularly described in the Deed of Trust, to Dale V. Clark and Douglas D. Callaway, in trust, to secure a certain Promissory Note ("Note") in the original principal amount of $900,000.00, originally payable to StellarOne Bank; and

WHEREAS, on May 9, 2014, StellarOne Bank merged into Union First Market Bank; and

WHEREAS, on February 16, 2015, Union First Market Bank changed its name to Union Bank & Trust ("Noteholder"), the current owner and holder of the Note; and

WHEREAS, the Deed of Trust provides, in part, that the Noteholder may from time to time in the Noteholder's sole discretion remove the Trustees and appoint successor Trustees, the successor Trustees succeeding to all the title, power and duties conferred upon the Trustees by the Deed of Trust and by any applicable law; and

Page 1 of 2

TITLE SOLUTIONS, INC

160091

WHEREAS, it is the desire of Union Bank & Trust to substitute William H. Casterline, Jr., Jeremy B. Root and Michael A. Howes, all residents of Fairfax County, Virginia, as Substitute Trustees in the place and stead of Dale V. Clark and Douglas D. Callaway, Trustees, whereupon William H. Casterline, Jr., Jeremy B. Root and Michael A. Howes will become vested with identically the same title to the property as provided under the terms of the Deed of Trust.

NOW, THEREFORE, WITNESS that Union Bank & Trust does hereby remove Dale V. Clark and Douglas D. Callaway as Trustees and substitutes and appoints William H. Casterline, Jr., Jeremy B. Root and Michael A. Howes as Substitute Trustees, any of whom may act, under the Deed of Trust in the place and stead of Dale V. Clark and Douglas D. Callaway, and that the Substitute Trustees be, and hereby are, vested with identically the same title to the property with the same rights and powers, and subject to the same duties as the Trustees originally named therein.

WITNESS the following signatures and seals:

UNION BANK & TRUST

By: _____

Name: _MARK HEEDE_____

Title: _SR VICE President_____

STATE OF _Virginia_____

COUNTY/CITY of _Richmond_____, to-wit:

I, _PATRICIA COLANERI_, a Notary Public in and for the State and City aforesaid, do hereby certify that _Mark Heede_____, whose name as such is signed to the foregoing Deed of Appointment of Substitute Trustees bearing date on the 18th day of March, 2015, has acknowledged the same before me in my state aforesaid.

WITNESS my hand and seal this __18th_ day of March, 2015.

_Patricia E Colaneri_____
Notary Public

My Commission Expires: _08-31-2018_

My Registration Number is: _293714_

4827-4495-4146, v. 1

PATRICIA E. COLANERI
Notary Public
Commonwealth of Virginia
293714
My Commission Expires Aug 31, 2018

INSTRUMENT #150001520
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
MARCH 27, 2015 AT 02:39PM

JANICE J. CORBIN, CLERK
RECORDED BY: SLP





VIRGINIA LAND RECORD COVER SHEET
FORM A - COVER SHEET CONTENT

PG0001 . 0015

| Instrument Date: | 3/18/2015 |
| Instrument Type: | ST |
| Number of Parcels: | 1      Number of Pages      2 |

☒ City / County

STAUNTON

| Tax Exempt? | VIRGINIA/FEDERAL LAW |
| Grantor: | |
| Grantee: | |
| Consideration | $0.00 |
| Existing Debt | $0.00 |
| Actual Value/Assumed: | $0.00 |

Prior Recording At: ☒ City      County

150000561

Percentage In This Jurisdiction      100.00000%

BUSINESS / NAME

| 1 | ☒ Grantor: | UNION BANK & TRUST |
| 2 | ☒ Grantor: | REA PARTNERSHIP-A |
| 1 | Grantee: | CASTERLINE, WILLIAM H. JR. |
| 2 | Grantee: | ROOT, JEREMY B |

GRANTEE ADDRESS
Name: WILLIAM H. CASTERLINE JR.
Address: 4020 UNIVERSITY DRIVE SUITE 300
City: FAIRFAX      State: VA   Zip Code:      22030

| Book Number: | Page Number: | Instrument Number |
| Parcel Identification Number (PIN): 2800 | Tax Map Number: |

Short Property Description:

(Area Above Reserved For Deed Stamp Only)

Current Property Address   910 GREENVILLE AVENUE
City: STAUNTON      State: VA   Zip Code:      24401
Instrument Prepared By   BLANKINGSHIP & KEITH, P.C.  Recording Paid By:   BLANKINGSHIP & KEITH, P.C.
Recording Returned To:   BLANKINGSHIP & KEITH, P.C. C/O KATHI MULHOLLAND
Address   4020 UNIVERSITY DRIVE SUITE 300
City: FAIRFAX      State: VA   Zip Code:      22030



FORM CC-1570 Rev. 10/14      Page 1 of 2      Cover Sheet A
§§ 17.1-223, 17.1-227.1, 17.1-249

VIRGINIA LAND RECORD COVER SHEET
FORM B – ADDITIONAL GRANTORS/GRANTEES

PG00⸱⸱⸱

Instrument Date:      3/18/2015

Instrument Type:      ST

Number of Parcels:   1      Number of Pages:   2

☒ City   County
                     STAUNTON

*(Area Above Reserved For Deed Stamp Only)*

GRANTOR BUSINESS / NAME
         1 Grantor:
         2 Grantor:
         3 Grantor:
         4 Grantor:
           Grantor:
           Grantor:
           Grantor:
           Grantor:

GRANTEE BUSINESS / NAME
3        1 Grantee:   HOWES, MICHAEL A.
           2 Grantee:
           3 Grantee:
           4 Grantee:
           Grantee:
           Grantee:
           Grantee:
           Grantee:



PG00·  ·   · 7 J 8

Prepared By and Return To:                                      Tax ct St   u n
Without Recourse: Jace B. Tolgate, VSB #6277
Birnbaum Jays Keith, P.C.
10420 University Drive, Suite 300
Fairfax, Virginia 22030
703-934-1333

Tax Map Number: 2800

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

THIS DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES, dated the 18th day of March, 2015, by and between **UNION BANK & TRUST**, successor by merger to **STELLARONE BANK**, Grantor **REA PARTNERSHIP-A**, a Virginia General Partnership, and Grantor for indexing purposes, Dale V. **CLARK**, and Douglas D. **CALLAWAY**, original Trustees for indexing purposes, and William H. **CASTERLINE, JR.**, Jeremy B. **ROOT**, and Michael A. **HOWES**, all of a business address of 10420 University Drive, Suite 300, Fairfax, Virginia 22030, Substitute Trustees, any or whom may act, Grantees.

## WITNESSETH:

WHEREAS, by a certain Credit Line Deed of Trust (the "Deed of Trust") dated February 28, 2013, and recorded as Instrument Number 130000495 in the Clerk's Office (the "Clerk's Office") of the Circuit Court of the City of Staunton, Virginia, REA Partnership-A, a Virginia General Partnership, conveyed all of its rights, title and interest in and to certain real and personal property, more particularly described in the Deed of Trust, to Dale V. Clark and Douglas D. Callaway, as trustee, to secure a certain Promissory Note ("Note") in the original principal amount of $900,000.00, originally payable to StellarOne Bank; and

WHEREAS, on May 9, 2014, StellarOne Bank merged into Union First Market Bank; and

WHEREAS, on February 16, 2015, Union First Market Bank changed its name to Union Bank & Trust ("Noteholder"), the current owner and holder of the Note; and

WHEREAS, the Deed of Trust provides, in part, that the Noteholder may from time to time in the Noteholder's sole discretion remove the Trustees and appoint successor trustees, the successor Trustees succeeding to all the title, power and duties conferred upon the Trustees by the Deed of Trust and by any applicable law; and

Page 1 of 2

WHEREAS, it is the desire of Union Bank & Trust to substitute William H. Casterline, Jr., Jeremy B. Root and Michael A. Howes, all residents of Fairfax County, Virginia, as Substitute Trustees in the place and stead of Dale V. Clark and Douglas D. Callaway, Trustees, whereupon William H. Casterline, Jr., Jeremy B. Root and Michael A. Howes will become vested with identically the same title to the property as provided under the terms of the Deed of Trust.

NOW, THEREFORE, WITNESS that Union Bank & Trust does hereby remove Dale V. Clark and Douglas D. Callaway as Trustees and substitutes and appoints William H. Casterline, Jr., Jeremy B. Root and Michael A. Howes as Substitute Trustees, any of whom may act, under the Deed of Trust in the place and stead of Dale V. Clark and Douglas D. Callaway, and that the Substitute Trustees be and hereby are, vested with identically the same title to the property with the same rights and powers and subject to the same duties as the Trustee originally named therein.

WITNESS the following signatures and seals.

UNION BANK & TRUST

By: _____

Name: _____

Title: _____

STATE OF _____

COUNTY/CITY of _____, to-wit:

I, _____, a Notary Public in and for the State and City aforesaid, do hereby certify that _____, whose name as such is signed to the foregoing Deed of Appointment of Substitute Trustee, bearing date on the ____ day of March, 2015, has acknowledged the same before me in my state aforesaid.

WITNESS my hand and seal this ____ day of March, 2015.

_____
Notary Public

My Commission Expires: _____

My Registration Number: _____

PATRICIA E. COLANERI
Notary Public
Commonwealth of Virginia
293714
My Commission Expires Aug 31, 2018

Page 2 of 2





UNION BANK & TRUST, successor by merger to STELLARONE BANK, and WILLIAM A. CASTERLINE, JR., JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute Trustees,  v.  REA PARTNERSHIP-A, a Virginia, General Partnership,

EXHIBIT C – 2013 Union Secured Note



*0002131754%0955%022815%ADA2030%241808791*

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-----------|---------|---------|----------|
| $900,000.00 | 02-28-2013 | | 2131754 | 167/630 | ADA2660 | 11109 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  RICHARD E. AUSTIN, BY STACEY A. AUSTIN,       Lender:  STELLARONE BANK
           ATTORNEY IN FACT                                       COMMERCIAL LENDING CHARLOTTESVILLE
           STACEY A. AUSTIN                                       105 ARBOR DRIVE
           830 TANNERS LANE                                       CHRISTIANSBURG, VA 24073
           EARLYSVILLE, VA 22936

### IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU
MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**Principal Amount: $900,000.00**                                    **Date of Note: February 28, 2013**

INITIAL INTEREST RATE. The initial Interest Rate is 4.250%.

PROMISE TO PAY.  RICHARD E. AUSTIN, BY STACEY A. AUSTIN, ATTORNEY IN FACT; and STACEY A. AUSTIN ("Borrower") jointly and
severally promise to pay to STELLARONE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of
Nine Hundred Thousand & 00/100 Dollars ($900,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding
principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one
payment of all outstanding principal plus all accrued unpaid interest on February 28, 2015.  In addition, Borrower will pay regular monthly
payments of all accrued unpaid interest due as of each payment date, beginning March 28, 2013, with all subsequent interest payments to be
due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any
accrued unpaid interest; than to principal; then to any unpaid collection costs; and then to any late charges.  Borrower will pay Lender at
Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE.  The interest rate on this Note is subject to change from time to time based on changes in an independent index
which is the Prime Rate as published in the Money Rates Section of the Wall Street Journal.  If a range of Rates is published, the highest will be
used.  (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the
term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current Index rate upon
Borrower's request.  The interest rate change will not occur more often than each month.  Borrower understands that Lender may make loans
based on other rates as well.  The index currently is 3.250% per annum.  Interest on the unpaid principal balance of this Note will be calculated
as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the index, adjusted if
necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 4.250% per annum based on a year of
360 days.  NOTICE  Under no circumstances will the interest rate on this Note be less than 4.250% per annum or more than the maximum rate
allowed by applicable law.

INTEREST CALCULATION METHOD.  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate
over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is
outstanding.  All interest payable under this Note is computed using this method.

PREPAYMENT.  Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless
agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early
payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or
similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower
will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check
or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other
conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: STELLARONE BANK, LOAN OPERATIONS,
105 ARBOR DRIVE CHRISTIANSBURG, VA 24073.

LATE CHARGE.  If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

INTEREST AFTER DEFAULT.  Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by
adding an additional 4.000 percentage point margin ("Default Rate Margin").  The Default Rate Margin shall also apply to each succeeding
interest rate change that would have applied had there been no default.  However, in no event will the interest rate exceed the maximum
interest rate limitations under applicable law.

DEFAULT.  Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default.  Borrower fails to make any payment when due under this Note.

Other Defaults.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in
any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement
between Lender and Borrower.

Default in Favor of Third Parties.  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or
sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or
Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this
Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false
or misleading at any time thereafter.

**PROMISSORY NOTE
(Continued)**

Loan No: 2131754

Death or Insolvency.  The death or dissolution or termination of Borrower's existence as a going business, or a receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor.  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Adverse Change.  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity.  Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.**  Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.**  Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**HOMESTEAD WAIVER.**  Borrower, to the extent permitted by law, hereby waives Borrower's homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**JURY WAIVER.**  Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.**  This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions.  This Note has been accepted by Lender in the Commonwealth of Virginia.

**CHOICE OF VENUE.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for MONTGOMERY County, Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.**  Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers FRANK MERRITT OR DAVID A. DIX as Borrower's attorney-in-fact to appear in the COUNTY OF MONTGOMERY OR COUNTY OF CHESTERFIELD clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal.  By a written instrument Lender may appoint a substitute for the above named attorney-in-fact.  If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.  No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.**  Borrower will pay a fee to Lender of $32.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.**  Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A)  a Credit Line Deed of Trust dated February 28, 2013, to a trustee in favor of Lender on real property located in TOWN AND COUNTY OF CULPEPER AND CITY OF STAUNTON, Commonwealth of Virginia.  The Real Property or its address is commonly known as  709 JAMES MADISON HIGHWAY, CULPEPER, VA 22701; 910 GREENVILLE AVENUE, STAUNTON, VA  24401.

(B)  an Assignment of All Rents to Lender on real property located in TOWN AND COUNTY OF CULPEPER AND CITY OF STAUNTON, Commonwealth of Virginia.  The Real Property or its address is commonly known as  709 JAMES MADISON HIGHWAY, CULPEPER, VA  22701; 910 GREENVILLE AVENUE, STAUNTON, VA  24401.

**LINE OF CREDIT.**  This Note evidences a revolving line of credit.  Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person.  Lender may, but need not, require that all oral requests be confirmed in writing.  Borrower agrees to be liable for all sums either:  (A)  advanced in accordance with the instructions of an authorized person or  (B)  credited to any of Borrower's accounts with Lender.  The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.  Lender will have no obligation to advance funds under this Note if:  (A)  Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note;  (B)  Borrower or any guarantor ceases doing business or is insolvent;  (C)  any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender;  (D)  Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or  (E)  Lender in good faith believes itself insecure.

**SUCCESSOR INTERESTS.**  The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.**  Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency.  Borrower's written notice describing the

**PROMISSORY NOTE**
**(Continued)**

Loan No: 2131754                                                                                          Page 3

specific inaccuracy(ies) should be sent to Lender at the following address: STELLARONE BANK LOAN OPERATIONS 105 ARBOR DRIVE CHRISTIANSBURG, VA 24073.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If "Borrower" consists of more than one party, the word "Borrower" as used in this Note shall refer to any one or more of the parties comprising "Borrower," and each of such parties shall be jointly and severally liable pursuant to this Note.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

Richard E. Austin by Stacy A. Austin

X _____ (Seal)          X _____ (Seal)
RICHARD E. AUSTIN, BY STACEY A. AUSTIN,                STACEY A. AUSTIN
ATTORNEY IN FACT

LASER PRO Lending, Ver. 13.4.0.022 Copr. Harland Financial Solutions, Inc. 1997, 2012. All Rights Reserved. - VA - V:\CFI\LPL\D20.FC TR-4079 PR-204

UNION BANK & TRUST, successor by merger to STELLARONE BANK, and WILLIAM A. CASTERLINE, JR., JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute Trustees,  v.  REA PARTNERSHIP-A, a Virginia, General Partnership,

EXHIBIT D – 2013 Union Cross-Collateralized Note

**JS**

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $932,000.00 | 02-13-2013 | 02-13-2018 | 2131530 | / | ADA2660 | MMW | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower:  RICHARD E. AUSTIN, BY STACEY A. AUSTIN,
           ATTORNEY IN FACT
           STACEY A. AUSTIN
           630 TANNERS LANE
           EARLYSVILLE, VA 22936

Lender:    STELLARONE BANK
           COMMERCIAL LENDING CHARLOTTESVILLE
           105 ARBOR DRIVE
           CHRISTIANSBURG, VA 24073

---

**IMPORTANT NOTICE**

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU
MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

---

**Principal Amount:  $932,000.00**                                                          **Date of Note:  February 13, 2013**

**PROMISE TO PAY.**  RICHARD E. AUSTIN, BY STACEY A. AUSTIN, ATTORNEY IN FACT; and STACEY A. AUSTIN ("Borrower") jointly and
severally promise to pay to STELLARONE BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of
Nine Hundred Thirty-two Thousand & 00/100 Dollars ($932,000.00), together with interest on the unpaid principal balance from February 13,
2013, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 3.905% per annum based on a
year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.**  Borrower will pay this loan in 59 regular payments of $5,679.40 each and one irregular last payment estimated at $769,685.41.
Borrower's first payment is due March 13, 2013, and all subsequent payments are due on the same day of each month after that. Borrower's
final payment will be due on February 13, 2018, and will be for all principal, accrued interest, and all other applicable fees, costs and charges, if
any, not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first
to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at
Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate
over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is
outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT PENALTY.**  Upon prepayment of this Note, Lender is entitled to the following prepayment penalty:  Borrower may prepay all or
any portion of this loan at any time, provided, however, that in the event of a refinance with an individual or a financial institution other than
Lender within year one (1) from the date of the Note or Modification (whichever is applicable), Borrower shall pay, and the Lender shall be
entitled to collect from Borrowers or any Guarantors, a penalty equal to two (2) percent of the amount prepaid; thereafter, for years two (2) and
three (3), Borrower shall pay, and the Lender shall be entitled to collect from Borrowers or any Guarantors, a penalty equal to one (1) percent of
the amount prepaid. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will
not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.
Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send
Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it
without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written
communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes
"payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be
mailed or delivered to: STELLARONE BANK, LOAN OPERATIONS, 105 ARBOR DRIVE CHRISTIANSBURG, VA 24073.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 4.000
percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

   **Payment Default.**  Borrower fails to make any payment when due under this Note.

   **Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in
   any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement
   between Lender and Borrower.

   **Default in Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or
   sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or
   Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

   **False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this
   Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false
   or misleading at any time thereafter.

   **Death or Insolvency.**  The death of Borrower or the dissolution or termination of Borrower's existence as a going business, or a trustee or
   receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for
   the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and
   such involuntary petition remains undismissed for sixty (60) days.

   **Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help,
   repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.
   This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall

# PROMISSORY NOTE
## (Continued)

Loan No: 2131530

Page 2

not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**HOMESTEAD WAIVER.** Borrower, to the extent permitted by law, hereby waives Borrower's homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the applicable courts for MONTGOMERY County, Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers FRANK MERRITT OR DAVID A. DIX as Borrower's attorney-in-fact to appear in the COUNTY OF MONTGOMERY OR COUNTY OF CHESTERFIELD clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. By a written instrument Lender may appoint a substitute for the above named attorney-in-fact. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $82.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A)   a Credit Line Deed of Trust dated February 13, 2013, to a trustee in favor of Lender on real property located in CITY OF CHARLOTTESVILLE AND COUNTY OF ALBEMARLE, Commonwealth of Virginia. The Real Property or its address is commonly known as 107 WEST MAIN STREET, CHARLOTTESVILLE, VA 22902; 8 GEORGETOWN GREEN; 13 GEORGETOWN GREEN; 24 GEORGETOWN GREEN; 113 GEORGETOWN GREEN, CHARLOTTESVILLE, VA 22901.

(B)   an Assignment of All Rents to Lender on real property located in CITY OF CHARLOTTESVILLE AND COUNTY OF ALBEMARLE, Commonwealth of Virginia. The Real Property or its address is commonly known as 107 WEST MAIN STREET, CHARLOTTESVILLE, VA 22902; 8 GEORGETOWN GREEN; 13 GEORGETOWN GREEN; 24 GEORGETOWN GREEN; 113 GEORGETOWN GREEN, CHARLOTTESVILLE, VA 22901.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: STELLARONE BANK LOAN OPERATIONS 105 ARBOR DRIVE CHRISTIANSBURG, VA 24073.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for

## PROMISSORY NOTE
### (Continued)

Loan No: 2131530                                                          Page 3

any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If "Borrower" consists of more than one party, the word "Borrower" as used in this Note shall refer to any one or more of the parties comprising "Borrower," and each of such parties shall be jointly and severally liable pursuant to this Note.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

*Richard E. Austin by Stacey A. Austin*

X _____ (Seal)      X _____ (Seal)
RICHARD E. AUSTIN, BY STACEY A. AUSTIN,             STACEY A. AUSTIN
ATTORNEY IN FACT

UNION BANK & TRUST, successor by merger to STELLARONE BANK, and WILLIAM A. CASTERLINE, JR., JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute Trustees,  v.  REA PARTNERSHIP-A, a Virginia, General Partnership,

EXHIBIT E – United Bank Deed of Trust

RECORDATION REQUESTED BY:
    United Bank
    2071 Chain Bridge Road
    Vienna, VA  22182

WHEN RECORDED MAIL TO:
    United Bank
    2071 Chain Bridge Road
    Vienna, VA  22182

SEND TAX NOTICES TO:
    United Bank                          120000434
    2071 Chain Bridge Road
    Vienna, VA  22182

Tax Map Reference No(s):  41-4243
Parcel ID No(s):  41-4243                     FOR RECORDER'S USE ONLY

                                                        Page 1

---

This Deed of Trust prepared by:  Kimberlyn C. Bernitz, United Bank

DEED OF TRUST

THIS IS A CREDIT LINE DEED OF TRUST

Maximum aggregate amount of principal
to be secured hereby at any one time: $450,000.00

Name and address of Noteholder secured hereby:

United Bank
2071 Chain Bridge Road
Vienna, VA  22182

THIS DEED OF TRUST is dated December 30, 2011, among REA Partnership A, whose address is 830 Tanners Lane, Earlyaville, VA  22936 ("Grantor"); United Bank, whose address is 2071 Chain Bridge Road, Vienna, VA  22182 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Barry D. BENISHEK, a resident of Virginia, whose address is 2071 Chain Bridge Road, Vienna, VA 22182 and R. Scott RITTER, a resident of Virginia, whose address is 2071 Chain Bridge Road, Vienna, VA 22182 ("Grantee," also referred to below as "Trustee"), either of whom may act.

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys, transfers, encumbers and pledges and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without

DEED OF TRUST
Loan No: 9001                              (Continued)                              Page 2

limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Culpeper County, Commonwealth of Virginia:

> See Schedule A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 709 James Madison Hwy., Culpeper, VA. The Real Property Tax Map Reference No(s) is/are 41-4243.

REVOLVING LINE OF CREDIT. This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, under which Lender may make advances to Borrower so long as Borrower complies with all the terms of the Note.

FUTURE ADVANCES. In addition to the amounts specified in the Note, this Deed of Trust also secures future advances.

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE   (A)   PAYMENT OF THE INDEBTEDNESS AND   (B)   PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.   THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (b) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (c) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (d) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

> Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) acting as Lender's agent, collect the Rents from the Property.

> Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

> Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture,

Loan No: 9001

Page 3

storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold

DEED OF TRUST
(Continued)

Loan No: 9001                                                                 Page 4

compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to

**DEED OF TRUST**
Loan No: 9001                                    (Continued)                                    Page 5

hazard, business interruption, and boiler insurance, as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of

DEED OF TRUST
(Continued)

Loan No: 9001

Page 6

the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants generally that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust; and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements,

Loan No: 9001                                                                                                          Page 8

continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security

**DEED OF TRUST**
(Continued)

Loan No: 9001                                                                              Page 9

interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business or the death of any partner, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay. This right is in addition to all other rights given

DEED OF TRUST
(Continued)

Loan No: 9001                                                                                  Page 10

to holders of promissory notes under Title 55 of the Code of Virginia.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Grantor expressly waives and releases any requirement or obligation that Lender or Trustee present evidence or otherwise proceed before any court or other judicial or quasi-judicial body as a precondition to or otherwise incident to the exercise of the powers of sale authorized by this Deed of Trust. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided in the Note, and all taxes and assessments due upon the Property at time of sale, and to retain as compensation a reasonable Trustee's commission; (b) second, to pay the whole amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in Trustee's hands are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the Property, less costs and expenses of obtaining possession.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

DEED OF TRUST
(Continued)

Loan No: 9001                                                                                              Page 11

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees equal to 20.000% of the principal balance due on the Indebtedness at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees equal to 20.000% of the principal balance due on the Indebtedness and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees equal to 20.000% of the principal balance due on the Indebtedness and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, a reasonable Trustee's commission and reasonable attorney fees incurred by the Trustee in performing its duties under the Deed of Trust, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee (and each of them if more than one) shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

## DEED OF TRUST
### (Continued)

Loan No: 9001                                                                                                Page 12

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which he or she resides, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and

**DEED OF TRUST**

Loan No: 9001                                    (Continued)                                    Page 13

are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.**  There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.**  This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions.  This Deed of Trust has been accepted by Lender in the Commonwealth of Virginia.

**Choice of Venue.**  If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the applicable courts for Fairfax County, Commonwealth of Virginia.

**Joint and Several Liability.**  All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower.  This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.  Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust.  No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.**  If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.**  Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns.  If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the

**DEED OF TRUST**

Loan No: 9001                                    **(Continued)**                                    Page 14

Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the Commonwealth of Virginia as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means United Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Stacey Austin and Richard E. Austin and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means REA Partnership-A.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any

## DEED OF TRUST
### (Continued)

Loan No: 9001                                                                                                      Page 15

and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means United Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 30, 2011, in the original principal amount of $900,000.00 from Borrower to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Barry D. Benishek, whose address is 2071 Chain Bridge Road, Vienna, VA 22182 and R. Scott RITTER, whose address is 2071 Chain Bridge Road, Vienna, VA 22182 and any substitute or successor trustees. If more than one person is named as trustee, the word "Trustee" means each such person.

**DEED OF TRUST**

Loan No: 9001 (Continued) Page 16

GRANTOR:

REA PARTNERSHIP-A

By: _Stacey A. Austin_ (Seal)
Stacey Austin, General Partner of REA Partnership-A

By: _____ (Seal)
Richard E. Austin, General Partner of REA Partnership-A

_Stacey A. Austin Attorneys in fact for Richard E. Austin_

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF _Virginia_ )
) SS
COUNTY OF _Albemarle_ )

On this _24th_ day of _January_, 20 _12_, before me, the undersigned Notary Public, personally appeared Stacey Austin, General Partner of REA Partnership-A and Richard E. Austin, General Partner of REA Partnership-A, and known to me to be partners or designated agents of the partnership that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the partnership, by authority of statute or its Partnership Agreement, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the partnership.

By _Regina Ware_                    Residing at _____

Notary Public in and for _Virginia_   My commission _____

My registration number _____

Regina Ware
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7078831
Com. Exp. January 31, 2016

LASER PRO Lending, Ver. 6.57.10.001  Copr. Harland Financial Solutions, Inc. 1997, 2012.  All Rights Reserved.  - VA  G:\HFSLP\CFI\LPL\G01.FC  TR-22888  PR-15

SCHEDULE A

LEGAL DESCRIPTION

All of that certain lot or parcel of land situate, lying and being on the north side of U. S. Routes 15-29 Business, in the Town and County of Culpeper, Virginia, in East Fairfax Magisterial District, and shown as "Out Parcel #3" on a plat of Dominion Square Shopping Center, recorded among the land records of Culpeper County, Virginia, in Large Plat Book 3, pages 38 and 39, and being as more fully described on a plat by Barry L. Wissinger, CLS, dated February 24, 1989, a copy of which is recorded with the hereinafter mentioned deed.

THERE IS ALSO CONVEYED HEREIN as an appurtenance to the land a non-exclusive easement, for ingress and egress, forty feet in width, extending from Belle Avenue adjacent to the northern boundary of Out Parcel #2 and Out Parcel #3, and thence adjacent to the eastern boundary of Out parcel #3 to Routes 15-29, all as more accurately shown on a plat recorded in Large Plat Binder 3, page 38, and as further shown on a sketch of Dominion Square, which said sketch is attached to a deed recorded in the aforesaid Clerk's Office in Deed Book 344, page 353.

Being the same property conveyed to REA Partnership-A, a Virginia general partnership, by deed from Aston-Culpeper, a North Carolina limited partnership, dated March 10, 1989, and recorded in the Clerk's Office of Culpeper County, Virginia, in Deed Book 409, page 66.

019

INSTRUMENT #120000434
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
JANUARY 26, 2012 AT 11:56AM

JANICE J. CORBIN, CLERK
RECORDED BY: JLW

UNION BANK & TRUST, successor by merger to STELLARONE BANK, and WILLIAM A. CASTERLINE, JR.,
JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute Trustees,  v.  REA PARTNERSHIP-A, a Virginia,
General Partnership,

EXHIBIT F – 1998 POA

BK 1782 PG 0470                    001113

## POWER OF ATTORNEY

### OF

### RICHARD E. AUSTIN

I, RICHARD E. AUSTIN hereby appoint STACEY A. AUSTIN as my true and lawful attorney-in-fact (Attorney). My Attorney is authorized to perform any acts of any nature that, in the opinion of my Attorney, should be done in the circumstances, as fully and effectively as I could do if acting personally. Acts which my Attorney may perform include, but are not limited to, the following:

1.      To demand, hold and generally deal with any monies, securities and other property which now or hereafter belong to me, or in which I may have an interest.

2.      To sign any note, check, security or other instrument, negotiable or nonnegotiable, whether or not the check or other instrument is drawn to the order of my Attorney, for deposit, discount, collection or otherwise.

3.      To write checks upon, or otherwise withdraw, all funds or account balances now or hereafter outstanding to my credit or to the credit of my Attorney, and to open accounts of whatever nature in my name or my Attorney's name.

4.      To vote in person or by proxy, to sell or otherwise dispose of, to cause to be registered in the name of a nominee selected by my Attorney, and to transfer, redeem, convert or exchange, any security that now belongs to me or may belong to me in the future or in which I may have an interest, and to make, execute and deliver any endorsement, assignment, certification, or other document in connection with any security.

*This document was prepared by Whitson, Aldhizer & Weaver, P.L.C.*

BK 1782 PG 0480

I may have an interest, and to make, execute and deliver any endorsement, assignment, certification, or other document in connection with any security.

5.     To buy, acquire or invest in property, real or personal, tangible or intangible, including without limitation any security, option, or other type of investment.

6.     To sell, encumber or lease any property, real or personal, buildings or other improvements or appurtenances to lands which now or hereafter belong to me, or in which I may have an interest, and to make, execute, acknowledge and cause to be recorded any and all deeds, contracts or other writings that may be necessary with respect to transactions involving such property.

7.     To apply for, receive and generally deal with any benefits from social security, Medicare, Medicaid or other governmental programs, or military or government service.

8.     To borrow or lend money or property, with or without security, and for such purposes to deliver or receive any documents that may be necessary or proper.

9.     To instruct any entity or person having custody or control of any assets of mine, or any assets in which I may have an interest, in any agency, fiduciary or other capacity, and I authorize that person or entity to rely upon such instructions.

10.    To pay all sums of money which may now or hereafter be owing by me, whether the obligation is incurred by me or by my Attorney; and to receive or give releases in connection with claims against me or in my favor.

11.    To commence, prosecute, mediate, arbitrate, discontinue, dismiss, compromise, defend, settle or appeal any or all actions or other legal proceedings which relate to my estate

-2-

BK 1782 PG 0481

or any part thereof, or related to any matter in which I or my estate may be in anywise concerned.

12.    To have access to any safe deposit box registered in my name only, or with others, and to remove or add to the contents thereof.

13.    To represent me in all tax matters to prepare, sign, and file federal, state or local income, gift, FICA and other tax returns of all kinds, claims for refunds, requests for extensions of time, ruling requests, petitions to the Tax Court or other courts regarding tax matters, and any and all other tax related documents, including, without limitation, receipts, offers, waivers, consents (including, but not limited to, consents and agreements under Internal Revenue Code sections 2032A, 2513 and 2652(a)(2), or any successor sections thereto), closing agreements and any power of attorney form required by the Internal Revenue Service or other taxing authority with respect to any tax periods; to pay taxes due, collect refunds, post bonds, receive confidential information, and contest deficiencies determined by the Internal Revenue Service or other taxing authorities; to exercise any elections I may have under federal, state or local tax law; and generally to represent me in all tax matters and proceedings of all kinds and for all periods before all offices and officers of the Internal Revenue Service and any other taxing authority.

14.    To do any or all of the following to the extent I could do so if acting personally: (i) to create any trust agreement, whether revocable or irrevocable, and whether funded or unfunded; the beneficiaries of which are any charitable organization, myself, or any of my descendants or their spouses; (ii) to terminate, revoke, modify or amend any trust agreement of which I am the grantor, beneficiary or otherwise, whether created by my Attorney, myself, or any

-2-

BK 1782 PG 0482

third party, to the extent I could do so if acting personally; (iii) to remove any trustee and appoint any successor trustee of any trust agreement of which I am the grantor, beneficiary or otherwise, whether created by my Attorney, myself or any third party; and (iv) to transfer any property, real or personal, to any trustee under any trust agreement, whether revocable or irrevocable, and whether funded or unfunded, of which I am the grantor, beneficiary or otherwise, and to remove assets from any such trust on my behalf for any purpose, as my Attorney may deem appropriate.

15.  To make gifts of any amount on my behalf to any charitable organization, to my spouse and to any of my descendants and their spouses.

16.  To pay directly costs of tuition and medical costs for any of my descendants and their spouses.

17.  To disclaim the succession to any property, real or personal, or interest therein, to the extent allowed under applicable state law.

18.  To borrow against or obtain the cash surrender value of any of my life insurance policies, to transfer the ownership of any such policies to any party, including any trust, to change the beneficiaries named in any such policies and to cancel such policies.

19.  To appoint any individual or corporation as substitute attorney under this power of attorney with all of the powers and authority granted to my Attorney.

My Attorney shall be entitled to receive reasonable compensation for services rendered. My Attorney shall not be required to make any settlement of accounts to any court or person.

-4-

BK 1782 PG 0474

Should any power granted to my Attorney hereunder be declared null and void by a court of competent jurisdiction, or should any power hereunder be revoked by me in another instrument, all other powers granted hereunder which have not been declared null and void or revoked shall remain valid, enforceable and in full effect.

I may hold assets or assets may be transferred to me that would not meet the prudent investor standard in Virginia as suitable legal investments. My Attorney may nevertheless retain the assets for as long as my Attorney considers appropriate even if the assets represent an overconcentration or do not meet the standard of prudence.

I hereby waive any self-dealing prohibitions that may exist under state law with respect to my spouse and any descendant of mine while such person is acting as my Attorney.

By the execution of this power of attorney, I hereby revoke all other powers of attorney previously granted by me.

This power of attorney shall not terminate upon my disability.

I hereby ratify and confirm all lawful acts done by my Attorney, by virtue hereof.

WITNESS my hand and seal this _11th_ day of ___July___, 1998.

_____ (SEAL)
RICHARD E. AUSTIN

_____
Witness

_____
Witness

-5-

BK 1782 PG 0474

Should any power granted to my Attorney hereunder be declared null and void by a court of competent jurisdiction, or should any power hereunder be revoked by me in another instrument, all other powers granted hereunder which have not been declared null and void or revoked shall remain valid, enforceable and in full effect.

I may hold assets or assets may be transferred to me that would not meet the prudent investor standard in Virginia as suitable legal investments. My Attorney may nevertheless retain the assets for as long as my Attorney considers appropriate even if the assets represent an overconcentration or do not meet the standard of prudence.

I hereby waive any self-dealing prohibitions that may exist under state law with respect to my spouse and any descendant of mine while such person is acting as my Attorney.

By the execution of this power of attorney, I hereby revoke all other powers of attorney previously granted by me.

This power of attorney shall not terminate upon my disability.

I hereby ratify and confirm all lawful acts done by my Attorney, by virtue hereof.

WITNESS my hand and seal this 17th day of _____July_____, 1998.

_____ (SEAL)
RICHARD E. AUSTIN

_____
Witness

_____
Witness

-5-

BK1782PG0475

STATE OF VIRGINIA
COUNTY/CITY OF _____, to-wit:

    The foregoing instrument was acknowledged before me in the jurisdiction aforesaid this _____ day of _____, 1998, by RICHARD E. AUSTIN,

    My commission expires _____.

_____
Notary Public

11034

-6-

BK1782PG0476

Should any power granted to my Attorney hereunder be declared null and void by a court of competent jurisdiction, or should any power hereunder be revoked by me in another instrument, all other powers granted hereunder which have not been declared null and void or revoked shall remain valid, enforceable and in full effect.

I may hold assets or assets may be considered to me that would not meet the prudent investor standard in Virginia as suitable legal investments. My Attorney may nevertheless retain the assets for as long as my Attorney considers appropriate even if the assets represent an overconcentration or do not meet the standard of prudence.

I hereby waive any self-dealing prohibitions that may exist under state law with respect to any spouse and any descendent of mine while such person is acting as my Attorney.

By the execution of this power of attorney, I hereby revoke all other powers of attorney previously granted by me.

This power of attorney shall not terminate upon my disability.

I hereby ratify and confirm all lawful acts done by my Attorney, by virtue hereof.

WITNESS my hand and seal this *17* day of _____, 1998.

_____ (SEAL)
RICHARD E. AUSTIN

_____
Witness

_____
Witness



BK 1782 PG 0477

STATE OF VIRGINIA
COUNTY/CITY OF Charlottesville, to-wit:

The foregoing instrument was acknowledged before me in the jurisdiction aforesaid
this 17 day of July , 1998, by RICHARD E. AUSTIN,

My Commission Expires May 31, 1999

My commission expires: _____

Laura Cichman
Notary Public



BK1782PG0478

VIRGINIA:          IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF ALBEMARLE:

THIS DEED WAS PRESENTED, AND WITH CERTIFICATE ANNEXED, IS ADMITTED

TO RECORD ON Jan. 26          , 19 99 . AT 10:54 O'CLOCK A. M.

| | | |
|---|---|---|
| STATE TAX | $ | (039) |
| LOCAL TAX | $ | (213) |
| TRANSFER FEE | $ | (212) |
| L.T.T.F. | $ 3.00 | (186) |
| VSLF | $ 1.00 | (145) |
| CLERK'S FEE | $ 16.00 | (301) |
| PLAT | $ | |
| SEC.58.1-802: | | |
| STATE TAX | $ | (038) |
| LOCAL TAX | $ | (220) |
| LOCAL TAX | $ | (223) |

TESTE:

SHELBY J. MARSHALL, CLERK

BY Loretta D. Morris
DEPUTY CLERK

TOTAL.          $ 20.00

UNION BANK & TRUST, successor by merger to STELLARONE BANK, and WILLIAM A. CASTERLINE, JR.,
JEREMY B. BOOT, and MICHAEL A. HOWES, Substitute Trustees,  v.  REA PARTNERSHIP-A, a Virginia,
General Partnership,

EXHIBIT G – 2013 POA

THIS DOCUMENT WAS PREPARED BY:
William D. Tucker, III
Tucker Griffin Barnes
307 W. Rio Road
Charlottesville, VA., 22901
Tax Map and Parcel 41-42U3 and 2800
Culpeper TMP

Return to:
TUCKER GRIFFIN BARNES P.C
ATTORNEYS AT LAW
307 WEST RIO ROAD
CHARLOTTESVILLE, VIRGINIA 22901

## POWER OF ATTORNEY

130001471

### KNOW ALL MEN BY THESE PRESENTS;

THAT I, **RICHARD E. AUSTIN**, of Earlysville, Virginia, do hereby make, constitute and appoint, and by these presents do make, constitute and appoint **STACEY A. AUSTIN**, of Earlysville, Virginia, my true and lawful attorney and in my name, place and stead, to act in my name, place and stead, with respect to signing any and all loan documents concerning the Refinance with StellarOne Bank, in the principal amounts of $900,000.00 property known as 709 James Madison Highway, Culpeper, Virginia and 910 Greenville Avenue, Staunton, Virginia.

I authorize my said Attorney in Fact to sign all trust notes and conveyances, with such covenants, warranties and assurances as my said Attorney in Fact shall deem expedient; to sign, seal, acknowledge and deliver any disclosure statements, settlement statements, affidavits, note, deed of trust, truth in lending, HUD-1 Settlement Statement, insurance notices, and such other documents as may be required in connection with the Refinance of the above-described property with StellarOne Bank; to sign and endorse checks payable to me or my account; and to accept and receive the sum of sums of money or other consideration which shall be coming to me or my account by reason of said loan; and to make, execute and perform all and every other act or acts, thing or things in law needful and necessary to be done in connection with said Refinance; as fully, largely and amply, to all intents and purposes, as I might or could do if acting personally.

Pursuant to the provisions of Section 11-9.1 of the 1950 Code of Virginia, as amended, "This Power of Attorney (of his authority) shall not terminate on disability of the principals." This Power of Attorney shall be deemed effective as of the date of

Cp 130000492
Culp 130001471

execution hereof, and shall terminate on February 28, 2014 and I hereby ratify and

confirm all lawful acts done by my Attorney by virtue hereof.

000145

SIGNATURE ON THE FOLLOWING PAGE

WITNESS the following signatures and seals.

_____ (SEAL)
Richard E. Austin

STATE OF ___Virginia___

CITY/COUNTY OF ___albemarle___, to-wit:

I, the undersigned, a Notary Public in and for the City/County and State aforesaid,
do hereby certify that Richard E. Austin whose name is signed to the foregoing
instrument, have acknowledged the same before me in my City/County and State
aforesaid.

GIVEN under my hand and seal this ___28th___ day of February, 2013.

_____
Notary Public

My commission expires:    2/28/16

KELLY LYNN FAILLACE
NOTARY
PUBLIC
REG.# 346897
MY COMMISSION
EXPIRES
7/29/2016
COMMONWEALTH OF VIRGINIA

INSTRUMENT #130001471
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
FEBRUARY 28, 2013 AT 02:15PM

JANICE J. CORBIN, CLERK
RECORDED BY: JLW